JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
Chief, Corporate & Securities Fraud Strike Force
ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Corporate & Securities Fraud Strike Force
LAUREN ARCHER
MATTHEW REILLY
Trial Attorneys
Department of Justice, Criminal Division, Fraud Section
    United States Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3561
    E-mail:    brett.sagel@usdoj.gov
               alexander.schwab@usdoj.gov
               lauren.archer@usdoj.gov
               matthew.reilly2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-CR-000456-TJH |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT ANDREW LEFT's MOTION TO DISMISS THE INDICTMENT |
| v. | |
| ANDREW LEFT, | Hearing Date: March 24, 2025[1] |
| Defendant. | Hearing Time: 10:00 am |
| | Ctrm: 9C |
| | Judge: Hon. Terry J. Hatter Jr. |

        Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District

_____

[1] The parties have entered into a stipulation requesting an
continuation of the hearing on defendant's motion to March 24, 2025.

1  of California and Assistant United States Attorneys Brett Sagel and

2  Alexander B. Schwab, and Glenn S. Leon, Chief, Fraud Section,

3  Criminal Division, and Trial Attorneys Lauren Archer and Matthew

4  Reilly, hereby files its opposition to defendant Andrew Left's motion

5  to dismiss the superseding indictment (Dkt. 34).

6      The Government's Opposition is based upon the attached

7  memorandum of points and authorities, the files and records in this

8  case, and such further evidence and argument as the Court may permit.

9

10  Dated: February 18, 2025          Respectfully submitted,

11                                     JOSEPH T. MCNALLY
                                       Acting United States Attorney
12
                                       LINDSEY GREER DOTSON
13                                     Assistant United States Attorney
                                       Chief, Criminal Division
14
                                       GLENN S. LEON
15                                     Chief, Fraud Section

16
                                       _____/s/_____
17                                     LAUREN ARCHER
                                       MATTHEW REILLY
18                                     ALEXANDER B. SCHWAB
                                       BRETT A. SAGEL
19
                                       Attorneys for Plaintiff
20                                     UNITED STATES OF AMERICA

21

22

23

24

25

26

27

28

ii

1

**TABLE OF CONTENTS**

2

<u>DESCRIPTION</u>                                                                      <u>PAGE</u>

3

4

TABLE OF AUTHORITIES...............................................i

5

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

6

I.    INTRODUCTION.................................................1

7

II.   LEGAL STANDARD..............................................3

8

III.  ARGUMENT....................................................4

9      A.    The Indictment's Securities Fraud Charges Sufficiently
             Pleaded All Essential Elements...........................4

10

11           1.    The Scheme's Object was Investors' Money and
                   Stock...............................................4

12           2.    The Indictment Alleges Actionable Misstatements.....6

13     B.    Indictment Properly Alleges Defendant Made False and
             Misleading Statements Regarding Targeted Securities......14

14

15           1.    CRON................................................16

           2.    NVTA................................................16

16           3.    GE..................................................17

17     C.    The Indictment Sufficiently Pleads Materiality..........18

18     D.    The Indictment Sufficiently Pleads Fraudulent Intent.....20

19

       E.    The First Amendment Does Not Protect Defendant's
20           Unlawful Conduct........................................21

21     F.    Defendant Fails To Articulate a Due Process Claim.......22

22     G.    The False Statement Charge Suffers from No Defects......23

23           1.    Count Nineteen Is Not Duplicitous...................23

24           2.    Count Nineteen States an Offense....................23

25 IV.   CONCLUSION..................................................26

26

27

28

1

**TABLE OF AUTHORITIES**

2   **CASES**

3   Bronston v. United States,
          409 U.S. 352 (1973)...........................................23
4
    Ciminelli v. United States,
5         598 U.S. 306 (2023)......................................passim
6   City of Chicago v. Morales,
          527 U.S. 41 (1999)...........................................22
7
    City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
8         Align Tech., Inc.,
          856 F.3d 605 (9th Cir. 2017)..........................7, 9, 10
9
    Fisher v. United States,
10        231 F.2d 99 (9th Cir. 1956)..................................23
11  Giboney v. Empire Storage & Ice Co.,
          336 U.S. 490 (1949)..........................................21
12
    In re Galena Biopharma, Inc. Sec. Litig.,
13        117 F. Supp. 3d 1145 (D. Or. 2015)............................7
14  In re Glumetza Antitrust Litig.,
          611 F. Supp. 3d 848 (N.D. Cal. 2020).........................11
15
    Kousisis v. United States,
16        144 S. Ct. 2655 (June 17, 2024)..............................19
17  Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.,
          39 F.4th 1092 (9th Cir. 2022)................................14
18
    Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
19        Fund, 575 U.S. 175 (2015).............................9, 10, 13
20  Regent Office Supply Co.,
          421 F.2d 1174 (2d Cir. 1970).................................19
21
    Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension Fund
22        GCC/IBT v. Deleage, 697 F.3d 869 (9th Cir. 2012).............15
23  SEC v. Beck,
          No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280 (C.D. Cal. Mar.
24        26, 2024).....................................................8
25  SEC v. Corp. Relations Grp., Inc.,
          CIV 99-1222 (ORL), 2003 WL 25570113 (M.D. Fla. Mar. 28,
26        2003)........................................................18
27  SEC v. Fassari,
          No. SACV 21-403 JVS(ADSX), 2021 WL 2290576 (C.D. Cal. May
28        5, 2021).................................................12, 18

SEC v. Gallagher,
    No. 21-CV-8739 (PKC), 2023 WL 6276688 (S.D.N.Y. Sept. 26,
    2023)..........................................................12, 19

SEC v. Huttoe,
    No. CIV.A. 96-2543, 1998 WL 34078092 (D.D.C. Sept. 14,
    1998)..............................................................2

SEC v. Lidingo Holdings, LLC,
    No. C17-1600 RSM, 2018 WL 2183999 (W.D. Wash. May 11, 2018).....8

SEC v. Stein,
    906 F.3d 823 (9th Cir. 2018)......................................6

SEC v. Thompson,
    238 F. Supp. 3d 575 (S.D.N.Y. 2017)...............10, 11, 17, 18

United States v. Buckley,
    689 F.2d 893 (9th Cir. 1982)......................................3

United States v. Camper,
    384 F.3d 1073 (9th Cir. 2004)........................23, 24, 25

United States v. Cannistraro,
    800 F. Supp. 30 (D.N.J. 1992)....................................18

United States v. Culliton,
    328 F.3d 1074 (9th Cir. 2003) (per curiam)....................24

United States v. Ely,
    142 F.3d 1113 (9th Cir. 1997)....................................3

United States v. Griffin,
    76 F.4th 724 (7th Cir. 2023).....................................5

United States v. Halbert,
    640 F.2d 1000 (9th Cir. 1981) (per curiam)....................22

United States v. Hansen,
    599 U.S. 762 (2023).............................................21

United States v. Jensen,
    93 F.3d 667 (9th Cir. 1996)......................3, 11, 15, 21

United States v. Laurienti,
    611 F.3d 530 (9th Cir. 2010)....................................22

United States v. Mahaffy,
    693 F.3d 113 (2d Cir. 2012)......................................6

United States v. McKenna,
    327 F.3d 830 (9th Cir. 2003)....................................25

United States v. Milheiser,
    98 F.4th 935 (9th Cir. 2024)..............................passim

ii

United States v. Morrison,
    536 F.2d 286 (9th Cir. 1976)...............................3, 15

United States v. Musacchio,
    968 F.2d 782 (9th Cir. 1992)...............................4, 9

United States v. Nordlicht,
    No. 16-cr-00640 (BMC), 2023 WL 4490615 (E.D.N.Y. July 12,
    2023)........................................................6

United States v. Nukida,
    8 F.3d 665 (9th Cir. 1993)................................11, 16

United States v. Rogers,
    321 F.3d 1226 (9th Cir. 2003)...............................20

United States v. Shortt Accountancy Corp.,
    785 F.2d 1448 (9th Cir. 1986)................................3

United States v. Tarallo,
    380 F.3d 1174 (9th Cir. 2004)...............................20

United States v. UCO Oil Co.,
    546 F.2d 833 (9th Cir. 1976)................................23

United States v. Wenger,
    427 F.3d 840 (10th Cir. 2005).........................13, 18, 22

United States v. Wey,
    No. 15-cr-611, 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) .........5

United States v. Yates,
    16 F.4th 256 (9th Cir. 2021)................................4

Zweig v. Hearst Corp.,
    594 F.2d 1261 (9th Cir. 1979).........................8, 14, 22

**STATUTES**

15 U.S.C. § 78j(b)...............................................7

18 U.S.C. § 1348.............................................5, 6

**REGULATIONS**

17 C.F.R. § 240.10b-5.........................................7, 9

**RULES**

Fed. R. Crim. P. ..........................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Andrew Left engaged in a classic securities fraud scheme. He provided false and misleading information to investors, while hiding his true intentions so he could profit at their expense. He did this to take investors' money by selling them stock or their property by buying stock at artificial and manipulated prices.

For his crimes, the indictment charges defendant with one count of engaging in a securities fraud scheme, seventeen substantive counts of securities fraud corresponding to the securities he targeted, and one count of lying to federal agents. The indictment tracks the statutory language for each count and properly pleads each element of the crime, which is sufficient to overcome defendant's motion. But, the indictment goes far beyond on the minimum requirements outlining the essential pattern of defendant's scheme:

1. take out a large position in a stock,
2. prepare to close out that position following a public statement,
3. publicize false and misleading statements about the stock with inflammatory rhetoric and extreme target prices without disclosing his own intent to trade in the opposite direction and promptly close out his position, and
4. then nearly immediately close out that position on the ensuing market reaction inconsistent with the view in the public statement and at prices far from his published target prices.

Importantly, and tellingly, the pattern was the same whether Defendant traded in the long and short direction. Such conduct has long been prohibited, in both directions. See SEC v. Capital Gains Rsch. Bureau, Inc., 375 U.S. 180, 181, 202 (1963) (finding a "fraud

1

or deceit" on clients, within the meaning of the Advisers Act, including an occasion where defendant "sold short some shares of a security immediately before stating in their Report that the security was overpriced [and a]fter the publication of the Report, respondents covered their short sales"); SEC v. Huttoe, No. CIV.A. 96-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors.").

Defendant mischaracterizes case law to argue that his scheme does not fit under the fraud statutes.  However, his scheme was squarely aimed at obtaining money and stock, which by definition is a property interest in a specific company.  Defendant's deception concerned one of the most essential elements of a securities transaction -- the price.  See United States v. Milheiser, 98 F.4th 935, 943 (9th Cir. 2024) (when misrepresentations "are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain").  Lastly, defendant ignores that his Ciminelli arguments do not even apply to Counts 2-18 charged under Title 15 securities fraud and provide no support for dismissing those counts.

The bulk of defendant's remaining arguments improperly raise factual disputes (guised as legal arguments), which do not provide support for a motion to dismiss an indictment and should be denied on this basis alone.  Defendant's remaining legal arguments for dismissal also lack merit and should be summarily rejected. For these and the reasons below, the Court should deny defendant's motion to dismiss the indictment in its entirety.

2

## II.  LEGAL STANDARD

A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986).  Although courts may make preliminary findings of fact necessary to decide the legal questions presented by the motion, they may not "invade the province of the ultimate finder of fact."  Id. But there is no summary judgment procedure in criminal cases, nor do the rules provide for such pre-trial evaluation of competing evidence from the parties by the Court, as opposed to a jury.  See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

"An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy."  United States v. Buckley, 689 F.2d 893, 896 (9th Cir. 1982).  The question for determining sufficiency is simply whether the "indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case."  Id. at 897.  "[A]n indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense."  Id. at 899.  "An indictment tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime."  United States v. Morrison, 536 F.2d 286, 288 (9th Cir. 1976).  The Ninth Circuit has repeatedly recognized that an "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient."  United States v. Ely, 142 F.3d 1113, 1120 (9th Cir. 1997).  Further, "the government [is] not required to allege its theory of the case or list

3

supporting evidence to prove the crime alleged." <u>United States v.
Musacchio</u>, 968 F.2d 782, 787 (9th Cir. 1992) (citing <u>Buckley</u>, 689
F.2d at 897.)   In analyzing the indictment, the Court shall presume
that the allegations of the indictment are true.   <u>Buckley</u>, 689 F.2d
at 897.

**III.  ARGUMENT**

    **A.   The Indictment's Securities Fraud Charges Sufficiently
Pleaded All Essential Elements**

        1.   <u>The Scheme's Object was Investors' Money and Stock</u>

    Defendant wrongly suggests that the indictment improperly
alleges that the object of defendant's fraud was not a traditional
property interest.   However, the indictment plainly articulates that
the object of defendant's scheme was investors' money or property
(stock).   These are classic property rights that do not trigger any
of the concerns arising from <u>Ciminelli v. United States</u>, 598 U.S. 306
(2023), which exclusively addressed the "right-to-control" theory of
wire fraud that is in no way involved in this case.   This case
similarly bears no semblance to <u>United States v. Yates</u>, 16 F.4th 256,
265-66 (9th Cir. 2021), a bank fraud case in which the prosecution
exclusively relied on the deprivation of accurate information alone
as the object of the scheme.   Instead, here, a scheme is alleged – to
which <u>Ciminelli</u> and <u>Yates</u> have no relevance – because the indictment
charges both deceit of investors *and* depriving them of something of
value.   <u>Cf.</u> <u>id.</u>

    Specifically, the indictment alleges that defendant's object was
to deprive victims of their money and stock, which are classical
property interests.   ECF No. 1, Indictment ("Ind.") ¶ 7 ("Defendant
Left knew that his recommendations influenced investors' decisions to

buy or sell stock and thereby empowered him to manipulate the price of a Targeted Security. . . . [D]efendant Left closed his position to capitalize on the temporary price movements caused by his public statements [and] used this deception and concealment to manipulate the market for his own financial gain"); ¶19a; ¶19c; ¶19e.v; ¶19f; ¶19g.

The indictment is clear: the entire purpose of the scheme is to manipulate the price that other investors would pay so that defendant could take their money or property. See United States v. Wey, No. 15-cr-611, 2017 WL 237651, at *10 (S.D.N.Y. Jan. 18, 2017) (denying motion to dismiss § 1348 count alleging pump-and-dump scheme and explaining that "[t]hat sort of scheme is, by its very nature, designed to generate economic benefits at the expense of unwary consumers" (internal quotation marks omitted)). In defendant's own words: his trades around Citron's reports and tweets were like taking "candy from a baby." Ind. ¶ 27. The candy was the investors' money and stock.

As in any fraud case, the deception was necessary for the success of the defendant's fraudulent scheme, but ultimate goal was to profit by taking money and stock taken from his victims. Courts have distinguished Ciminelli on exactly this basis. See, e.g., United States v. Griffin, 76 F.4th 724, 738-39 (7th Cir. 2023) (rejecting argument that the Government pursued a right-to-control theory under Ciminelli, explaining that the allegations explicitly focused on depriving SBA of loan guarantees and the millions of dollars lost paying them out). There is thus no basis to dismiss Count One.

Furthermore, Counts Two through Eighteen are charged under Title 15 securities fraud, which is a separate statutory regime from the

5

1  criminal fraud statutes at the heart of <u>Ciminelli</u> and related cases.

2  There is no analogous requirement that the object of the scheme be

3  money or property under Title 15.  <u>United States v. Nordlicht</u>, No.

4  16-cr-00640 (BMC), 2023 WL 4490615, at *5 (E.D.N.Y. July 12, 2023)

5  ("Wire fraud, unlike securities fraud [under Title 15], does require

6  an intent to deprive the victim of money or property.").  This is

7  because "intent to harm" is not an element of such charges; instead,

8  it is enough that a defendant intends to "deceive" or "manipulate."

9  <u>Id.</u>  Defendant's attempts to expand the reach of <u>Ciminelli</u> are

10  meritless and inapplicable as to Counts Two through Eighteen and

11  should be rejected.

12          2.    The Indictment Alleges Actionable Misstatements

13                a.    *Specific False Representations or Material*

14                      *Omissions are Not Required for Count One*

15          As an initial matter, defendant's arguments concerning the

16  purported lack of actionable misstatements cannot and does not apply

17  to Count One, which charges a fraudulent scheme in violation of 18

18  U.S.C. § 1348(1). To properly charge a count under § 1348(1), the

19  indictment must allege: "(1) a scheme or artifice to defraud, (2)

20  with fraudulent intent, (3) in connection with any security." <u>SEC v.</u>

21  <u>Stein</u>, 906 F.3d 823, 830 (9th Cir. 2018).  Critically, false

22  representations or material omissions are not required for a

23  conviction under § 1348(1).  <u>United States v. Mahaffy</u>, 693 F.3d 113,

24  125 (2d Cir. 2012) ("[T]he jury could have convicted under § 1348

25  without considering false representations or material omissions.").

26  Accordingly, because the government adequately pled the statutory

27  elements required to allege a violation of § 1348, the motion should

28  be denied as to Count One.

     b. *Counts Two through Eighteen Allege Scheme*
      *Liability That Do Not Require a Material*
      *Misrepresentation*

  Counts Two through Eighteen are not limited to material misstatement allegations, but also allege scheme liability under Rule 10b-5(a) and (c) under the Securities Exchange Act (15 U.S.C. § 78j(b)). Under these provisions, typically referred to as "scheme liability," it is unlawful for any person in connection with the purchase or sales of securities "[t]o employ any device, scheme, or artifice to defraud," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]" 17 C.F.R. § 240.10b-5(a), (c).[1] Scheme liability claims are distinct from claims under Rule 10b-5(b). Rule 10b-5(b) claims are based solely on deceptive statements or omissions, whereas scheme liability claims involve deceptive conduct, which may include deceptive statements or omissions but must also include additional conduct." In re Galena Biopharma, Inc. Sec. Litig., 117 F. Supp. 3d 1145, 1192 (D. Or. 2015).

  The indictment is replete with allegations of defendant's deceptive conduct in connection with his securities trading. See, e.g., Ind. ¶¶ 71-76 (falsely holding himself out as managing outside investor money in a hedge fund through the dissemination of investor letters); ¶¶ 86-101 (falsely holding Citron out as independent from outside third-party influence and bias); ¶¶ 102-103 (concealing his

---

  [1] In considering the applicability of the Omnicare decision to Section 10(b), the Ninth Circuit focused on Rule 10b-5(b) but did not address the related subsections. City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 616 (9th Cir. 2017).

relationship with a third-party hedge fund through false invoices and bank transfers); ¶ 104 (lying to agents); ¶ 106 (deleting his twitter account).  Moreover, despite defendant's claims, there is no requirement for scheme liability that a defendant made false statements about the underlying company.  Zweig v. Hearst Corp., 594 F.2d 1261, 1266-67 (9th Cir. 1979) (finding a "scheme to manipulate the market" where "withheld information did not relate directly to the company's value and expected performance, but it was necessary to avoid misleading [defendant]'s audience on the reliance they could place on the column").  This type of long-recognized illegal conduct – sometimes referred to as "scalping" – may be adequately charged when the indictment alleges a defendant: (i) acquires shares of a stock; (ii) recommends that others purchase the stock without disclosing his intention to sell; and (iii) subsequently sells the stock for his own benefit.  See, e.g., SEC v. Beck, No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280 (C.D. Cal. Mar. 26, 2024) (finding that defendant engaged in a fraudulent scheme by purchasing stock, promoting the stock on Twitter, and then selling his stock at a profit subsequent to his recommendations without disclosing his intent sell); see also SEC v. Lidingo Holdings, LLC, No. C17-1600 RSM, 2018 WL 2183999, at *8 (W.D. Wash. May 11, 2018) (defendant engaged in fraudulent scheme by purchasing "issuer stock just prior to publishing an article about the issuer, then sold the stock at a profit soon after his article was published, which was contrary to the advice he gave in his articles advocating holding for the long-term").  Moreover, defendant's use of misleading target prices – used by defendant only to get media attention before he made his own trades at distant prices (Ind. ¶ 19e.iv) – were deceptive devices within the

8

1    meaning of Rule 10b-5(a).  For these reasons, the government

2    adequately alleged scheme liability under Rule 10b-5(a) and (c) in

3    Counts Two through Eighteen separate and apart from any misstatement

4    liability.

5                        *c.   The Indictment Alleges Defendant Made False and*

6                              *Misleading Misrepresentations*

7         Even if defendant was only charged with violating Rule 10b-5(b),

8    which he was not, the indictment identified numerous actionable false

9    or misleading statements.  Defendant's argument wrongly suggests that

10   the result of the Omnicare, Inc. v. Laborers Dist. Council Constr.

11   Indus. Pension Fund, 575 U.S. 175 (2015), decision is to immunize

12   defendant from securities fraud liability for any statements he casts

13   as opinion.  This is not the law.  To the extent the alleged

14   misstatements are opinions, the indictment has properly pled that

15   they meet one of the three avenues of fraudulent opinion liability

16   under Omnicare and Dearborn.  As a starting point, there are three

17   grounds for opinions to constitute false opinion statements under

18   Rule 10b-5(b):[2]

19        *First*, for a misrepresentation, the allegations must be that "the

20        speaker did not hold the belief she professed and that the belief

21        is objectively untrue";

22

23

24   _____

25   [2] Defendant wrongly suggests that to charge opinions as
     misrepresentations "requires more than conclusory allegations."  In
26   fact, it does not.  In weighing a motion to dismiss an indictment, a
     court does not weight the strength of the evidence, but instead
27   determines whether the elements have been sufficiently pled.
     Musacchio, 968 F.2d at 787 ("[T]he government [is] not required to
28   allege its theory of the case or list supporting evidence to prove
     the crime alleged.").

                                        9

1    *Second*, when a fact within the opinion is materially misleading,

2    the indictment must allege that "the supporting fact the speaker

3    supplied is untrue"; or

4    *Third*, for an omission or half-truth, the charges must include

5    "facts going to the basis for the issuer's opinion whose omission

6    makes the opinion statement at issue misleading to a reasonable

7    person reading the statement fairly and in context."

8    Dearborn, 856 F.3d at 615-16 (cleaned up) (quoting Omnicare, 575 U.S.

9    at 194).

10        Putting aside the numerous allegations of clearly non-opinion

11   misrepresentations, see, e.g., Ind. ¶¶ 26, 31, 52, 56, 69, 74-76, 83,

12   90b, the indictment properly alleges misrepresentations where

13   defendant did not hold the purported belief in question and the

14   belief was objectively untrue.  The distance between defendant's

15   comments on a company and his subsequent trading behavior are

16   outlined throughout the indictment. See infra Section B.  This comes

17   into the sharpest relief where defendant featured target prices in

18   his public statements that did not reflect his honest belief about

19   the value of the security, but rather, were designed to induce panic

20   in the market.  See Ind. ¶ 19e.iv.  Such statements are actionable as

21   frauds.  SEC v. Thompson, 238 F. Supp. 3d 575, 601 n.12 (S.D.N.Y.

22   2017) (holding that the defendants' sales around their positive stock

23   predictions "suggests they did not reasonably believe the securities

24   independently had the touted value" and finding, under Omnicare, "the

25   projections are actionable" as either misrepresentations or by

26   providing untrue supporting facts).

27        Defendant argues that there were other reasons why defendant's

28   trading behavior did not match his publicly stated opinion.  But, the

10

1  false opinions are properly alleged in the indictment and a motion to

2  dismiss the indictment is not the appropriate venue for defendant to

3  dispute the alleged facts or raise affirmative defenses.  See Jensen,

4  93 F.3d at 669 ("A motion to dismiss the indictment cannot be used as

5  a device for a summary trial of the evidence."); United States v.

6  Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (holding Rule 12(b) motion to

7  dismiss is not the proper way to raise a factual defense).

8      Defendant's final argument that target price statements cannot

9  be considered false based on his contemporaneous trading is

10 fundamentally flawed.  In fact, defendant's immediate closing of

11 positions at prices dramatically different from the target prices he

12 publicly proclaimed directly demonstrates that he did not genuinely

13 believe his own valuation claims.  Thompson, 238 F. Supp. 3d at 600

14 (defendants trading around the time of glowing stock prediction

15 "suggests they did not reasonably believe that the securities

16 independently had the touted value").  At best, this argument raises

17 a question of fact for the jury, and does not provide a basis for a

18 motion to dismiss.

19          d.   The Indictment Charges Actionable Half-Truths

20     Defendant also states that the indictment fails to allege

21 actionable half-truths.  Once an individual decides to speak, he is

22 obligated to speak the whole truth and not withhold material

23 information. See In re Glumetza Antitrust Litig., 611 F. Supp. 3d

24 848, 863 (N.D. Cal. 2020).  Actionable half-truths are explicitly

25 alleged throughout the indictment: defendant made public statements

26 online, in interviews, and on cable news about the positions he held

27 in targeted securities while omitting that he intended to (and in

28 many cases had already placed orders to) close out his positions

11

immediately after publication, once his story had positively or negatively impacted the market for the stock.  See Ind. ¶19f.  Courts have consistently found this type of bait and switch misleading. See, e.g., SEC v. Fassari, No. SACV 21-403 JVS(ADSX), 2021 WL 2290576, at *6 (C.D. Cal. May 5, 2021) ("The Court agrees that it was a material misrepresentation for [the defendant] to state that he was holding on to his shares when he was actually selling them, and that prudent investors would consider this information relevant in make their decisions regarding whether to invest.").

In SEC v. Gallagher, No. 21-CV-8739 (PKC), 2023 WL 6276688, at *1, 9 (S.D.N.Y. Sept. 26, 2023), the court examined a case involving a securities analyst who used his Twitter account to encourage followers to purchase stocks while concealing that he was selling or would imminently be selling his own shares during or immediately after these recommendations.  The court denied Gallagher's motion to dismiss, holding that by choosing to publicly recommend stocks on Twitter, he assumed a "duty to tell the whole truth."  Gallagher, 2023 WL 6276688, at *10 ("[A] failure to disclose a then-present intent to sell is sufficient to render the statements touting a stock misleading."); see also Capital Gains Rsch. Bureau, Inc., 375 U.S. at 181, 202 (Supreme Court applying the same concept in the short direction).  As in Gallagher, the indictment here sufficiently alleges that defendant's public statements created an affirmative duty to be accurate and complete about material issues, including that he was selling or would imminently be selling his own shares in those same issuers[.] See Ind. ¶ 19e.ii.  That defendant offered his opinion to investors while intending to trade in the opposite direction is certainly the sort of fact that a reasonable person

1  would want to know to fairly and contextually understand defendant's

2  opinion.  See United States v. Wenger, 427 F.3d 840, 854 (10th Cir.

3  2005) (defendant knew that, while touting a stock in his newsletter,

4  "information concerning his own sale of PanWorld would materially

5  affect the investment decisions of his listeners").

6      Defendant's conduct far exceeds the omitted disclosure scenarios

7  explicitly contemplated by the Supreme Court in Omnicare.  In that

8  case, the Court illustrated an actionable omission by hypothesizing a

9  company stating, "We believe our conduct is lawful" without

10  disclosing it had not consulted a lawyer – a scenario deemed

11  potentially misleading because an investor would expect such a

12  statement to rest on meaningful inquiry rather than mere intuition.

13  Omnicare, Inc., 575 U.S. at 188-89.  The Court emphasized that

14  investors expect "not just that the issuer believes the opinion

15  (however irrationally), **but that it fairly aligns with the**

16  **information in the issuer's possession at the time**."  Id. (emphasis

17  added).  Unlike the hypothetical in Omnicare involving a potentially

18  incomplete but sincere belief, the indictment alleges defendant's

19  statements were calculated misrepresentations designed to generate

20  market movements for his personal financial benefit, representing a

21  far more sinister departure from the transparency and good faith

22  required in market communications.

23      Given the body of well-established case law holding that when a

24  defendant speaks about a stock, it is a materially misleading half-

25  truth to omit information that he intends to trade in the opposite

26  direction after speaking, defendant's motion to dismiss on this

27  ground should be denied.

28

**B.    Indictment Properly Alleges Defendant Made False and Misleading Statements Regarding Targeted Securities**

Defendant argues the indictment contains additional security-specific deficiencies that warrant dismissal.  First, for CRON, TSLA, ROKU, BYND, NVTA, Namaste, GE, NVDA, TWTR, FB, AAL, PLTR, IGC, and XL, defendant argues the government failed to allege misrepresentations *about* the securities.  Defendant's argument is not cause for dismissal because none of the securities offenses charged require that defendant made a false statement about the securities themselves.[3]  See Zweig, 594 F.2d at 1265-66.

Second, for CRON, ROKU, BYND, NVTA, defendant argues that his statements about his trading positions and valuations are too vague (e.g., "small size," "some") or too qualified (e.g., "we expect," "we believe") to be objectively false.  The cases on which defendant relies address only the heightened pleading standards that a private plaintiff must meet in other to plead a civil Section 10(b) claim with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA").[4]  For example, in Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc., 39 F.4th 1092, 1099 (9th Cir. 2022), the Ninth Circuit

---

[3] In order to convict the defendant of violating Rule 10b-5(b), the government must prove the defendant "made an untrue statement of a material fact or omitted to state a material fact that made what was said, under the circumstances, misleading."

[4] These heightened pleading standards do not apply in criminal cases.  Civil federal securities fraud claims are also different from criminal federal securities fraud claims in a number of other key respects.  For example, private plaintiffs are required to plead and prove different additional elements in order to recover under the federal securities anti-fraud provisions, namely reliance, causation and loss.  In addition, private plaintiffs are limited to seeking recover from "primary" violators; private plaintiffs are foreclosed from recovering under aiding and abetting or conspiracy-based theories.

14

1    affirmed the dismissal of the federal securities class action

2    complaint because the private plaintiff failed to plead sufficient

3    facts to establish material misrepresentations or omissions.  The

4    court did not address or discuss the viability of the legal theories

5    underlying the private plaintiff's claims, let alone foreclose them

6    as a matter of law in criminal cases.

7        Third, for TSLA, ROKU, Namaste, NVDA, TWTR, FB, AAL, PLTR, IGC,

8    and XL, defendant argues that his statements were true when

9    published.  See Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension

10   Fund GCC/IBT v. Deleage, 697 F.3d 869, 876 (9th Cir. 2012) (applying

11   the PSLRA in the civil context).  Again, defendant's arguments are

12   inapplicable in the criminal context.  The indictment alleges

13   defendant's statements were false and misleading when made, and in

14   reviewing a motion to dismiss, the Court must presume the truth of

15   the allegations in the indictment.  See Jensen, 93 F.3d at 669.

16       For PTE, LK, and NVAX, defendant objects to the government's use

17   of a table listing additional executions in furtherance of the

18   securities fraud scheme.  Defendant fails to grapple with the fact

19   that the charge corresponding to each ticker tracks the statutory

20   language while giving defendant more than sufficient notice of the

21   nature of the scheme and charges against him.  Ind. ¶¶ 109-111.

22   Alone, charging the statutory language would be sufficient to

23   overcome the motion, but with the additional detail included in the

24   indictment, it exceeds the pleading requirements.  As the indictment

25   tracks the language of Section 10(b) and alleges each element of the

26   offense, it is sufficient on Counts 5, 14, and 15.  Morrison, 536

27   F.2d at 288.

28

The government's securities fraud charges are properly alleged for each count.  We address representative examples below.

### 1.    CRON

As alleged in the indictment, on August 30, 2018, defendant published a deceptive report and tweet about CRON and made false and misleading statements to the media about his trading in CRON.  To fraudulently induce retail investors to sell shares and cause an artificial decline in the stock price, defendant accused CRON of engaging in fraud and said the stock price would drop from $11.50 to $3.50 per share.  Ind. ¶¶ 21-28.  The indictment alleged defendant attempted to conceal the scheme from regulators by falsely denying that he targeted stocks that had large retail bases, while privately, he discussed targeting stocks that were "alll retail," which he described as "taking candy from a baby."  Ind. ¶¶ 21, 27, 28.

The indictment further alleges defendant falsely stated that he only covered a "small size" of his short position in CRON earlier in the day when he had already closed more than 60% percent of his pre-tweet position.  Id. ¶ 25.  While defendant contends his statement was not false, this invitation to resolve competing factual inferences is improper on a motion to dismiss.  See Nukida, 8 F.3d at 669.

### 2.    NVTA

The indictment alleges that on July 17, 2019, defendant disseminated an investor letter as a deceptive device to manipulate the price of NVTA to benefit defendant's trading position.  Ind. ¶¶ 77-78.  Specifically, defendant claimed Citron Capital would "continue to add to our position at current levels" to fraudulently induce retail investors to buy shares and cause an artificial

16

1  increase in the stock price, when in fact defendant was reducing the

2  fund's position.  Ind. ¶ 78-79.

3      The indictment also alleges that on July 31, 2019, defendant

4  published a deceptive report and tweet about NVTA to "juice it" and

5  "get stock to 30."  Ind. ¶ 80.  Specifically, defendant claimed

6  Citron Capital "will continue to stay long until the stock hits at

7  least $65," to fraudulently induce retail investors to buy shares and

8  cause an artificial increase in the stock price, when in fact

9  defendant was selling the fund's shares when NVTA was trading at less

10 than $30 per share.  Ind. ¶¶ 83-85.  Such statements are actionable

11 frauds.  See Thompson, 238 F. Supp. 3d at 600 (concluding that trades

12 trading around the time of glowing stock prediction "suggests

13 [defendants] did not reasonably believe that the securities

14 independently had the touted value").

15     The indictment properly alleges that defendant's statements

16 about NVTA were not truly held beliefs but rather deceptive devices.

17 See Ind. ¶¶ 7, 19, 80-85.

18          3.   GE

19     The indictment properly alleges defendant made false and

20 misleading representations in Citron's GE report to manipulate the

21 price of GE's stock and benefit his own trading positions.

22 Specifically, defendant represented that "Citron took the opportunity

23 to buy stock as well."  In truth, at the time defendant made the

24 statement, he had already placed an order to sell his shares.  Ind.

25 ¶ 89.  Defendant also falsely stated that he had never been received

26 compensation from a third party to publish research or tied to the

27 success of a trade.  Ind. ¶¶ 90-93.  The indictment sufficiently

28 alleges that this statement is false and material to investors, and

that defendant's concealment of this information was deceptive.  <u>See</u> <u>Thompson</u>, 238 F. Supp. 3d at 600 (finding that "SEC asserts that acting in concert with other newsletter publishers is itself deceptive conduct that violates Section 10(b) and Rule 10b-5(a) and (c)" in denying motion to dismiss).  Again, defendant's argument to the contrary is one he can make at trial, not in a motion to dismiss.

### C.    The Indictment Sufficiently Pleads Materiality

The indictment alleges defendant engaged in a scheme designed to manipulate markets and deceive investors.  At the core of the allegations are defendant's materially misleading statements to the investing public about his stock valuations and trading.  <u>See</u> <u>Fassari</u>, 2021 WL 2290576, at *6; <u>Wenger</u>, 427 F.3d at 854; <u>United</u> <u>States v. Cannistraro</u>, 800 F. Supp. 30, 84 (D.N.J. 1992); <u>SEC v.</u> <u>Corp. Relations Grp., Inc.</u>, CIV 99-1222 (ORL), 2003 WL 25570113, at *8 (M.D. Fla. Mar. 28, 2003).  As plainly and repeatedly alleged in the indictment, defendant made materially misleading statements about a stock's value and his trading in that security in order to generate market reactions that would benefit his trading positions.  Ind. ¶ 19e.v.  In the case of CRON (Ind. ¶¶ 21-26), the indictment alleges defendant built a short position and then published tweets claiming the stock was fraudulent, while simultaneously selling his positions.  <u>See also</u> Ind. ¶¶ 29-33, ¶¶ 34-37 (NVDA), and ¶¶ 38-43.

The indictment also properly alleges defendant made other materially false and misleading statements.  For example, the indictment alleges defendant made materially false and misleading statements about Citron's research staff, process, independence, external investors, and economic incentives in order to create a false perception of Citron's objectivity and reliability.  Ind.

18

¶ 19e.iii.  The indictment further alleges defendant made material misrepresentations in fictional investor letters he disseminated to the public to create the false pretense that defendant had third party investors and extraordinary returns and bolster his credibility.  Ind. ¶¶ 71-76.  In addition, the indictment alleges defendant made materially false and misleading statements regarding his false claims of independence from hedge funds.  Ind. ¶¶ 94-104.

Defendant argues that the government fails to establish materiality under the standard set forth in Milheiser, contending that his misrepresentations were not "essential to the bargain itself."[5]  Milheiser involved deceptive yet immaterial sales tactics for printer toner where the customers ultimately got the toner they paid for.  The court contrasted this situation with misrepresentations "directed to the quality, adequacy or price of the goods themselves [where] the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain."  98 F.4th at 943.

The misrepresentations alleged in the indictment squarely fall in the latter bucket focusing on the price and value of various securities.  Thus, this case diverges entirely from the facts in Milheiser[6] and more closely aligns with the principles articulated in SEC v. Gallagher, which emphasized that the critical question is whether omitted facts would contradict a reasonable investor's

---

[5] While the indictment already complies with Milheiser, its holding may be limited depending on the Supreme Court's decision in Kousisis v. United States, 144 S. Ct. 2655 (June 17, 2024).

[6] Both Milheiser and Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970), dealt with products, where those goods themselves formed the basis of the transactions, where here the transactions at issue here are securities, where price is the key aspect of the transactions.

understanding of the statement itself.  In this case, defendant's

misrepresentations gave investors a materially different perception

of the targeted security.  These were not mere peripheral tactics or

collateral statements like those in <u>Milheiser</u>.  Rather, victim

investors were deprived of money when defendant fraudulently induced

them to purchase securities at artificially inflated or deflated

prices through his deceptive conduct.  Rather than peripheral sales

tactics, defendant's scheme went to the heart of stock trading.

**D.   The Indictment Sufficiently Pleads Fraudulent Intent**

Because intent in securities fraud cases turns on the "specific

intent to defraud, mislead, or deceive" <u>United States v. Tarallo</u>, 380

F.3d 1174, 1181 (9th Cir. 2004), defendant's argument that the

indictment fails to plead intent should be rejected for the reasons

detailed above in Section III.A(1).

Defendant next contends his use of encrypted messaging, deleting

communications, and making false statements to government agents are

not evidence of his intent to cheat readers.  Again, defendant

improperly attempts to shoehorn a trial defense into a motion to

dismiss.  Defendant can argue that his serial obfuscation was

innocent, but it will be up to the jury to decide how to weigh

circumstantial evidence.  <u>See</u> <u>United States v. Rogers</u>, 321 F.3d 1226,

1230 (9th Cir. 2003).

It is unclear what defendant thinks is required beyond an

explicit allegation of criminal intent, but the indictment does so

here.  Defendant's repeated attempts to improperly dispute the

factual allegations set forth do not alter the facts alleged in the

indictment, which are more than sufficient to establish that

defendant acted willfully, knowingly, and with the intent to defraud

1    investors.  Defendant wrongly attempts to use this motion to fight

2    his factual battles, but this not the vehicle for such disputes.  <u>See</u>

3    <u>Jensen</u>, 93 F.3d at 669.  Because defendant's arguments concerning the

4    failure to allege intent are purely and improperly factual arguments,

5    they do not provide a basis for dismissing the indictment.

6        **E.    The First Amendment Does Not Protect Defendant's Unlawful**

7            **Conduct**

8        In raising his First Amendment challenge, defendant cites no

9    criminal cases.  And for good reason: "[I]t has never been deemed an

10   abridgement of freedom of speech or press to make a course of conduct

11   illegal merely because the conduct was in part initiated, evidenced,

12   or carried out by means of language, either spoken, written, or

13   printed."  <u>Giboney v. Empire Storage & Ice Co.</u>, 336 U.S. 490, 502

14   (1949).  As the Supreme Court has repeatedly articulated, "[s]peech

15   intended to bring about a particular unlawful act has no social

16   value; therefore, it is unprotected.  We have applied this principle

17   many times, including to the promotion of a particular piece of

18   contraband, solicitation of unlawful employment, and picketing with

19   the sole, unlawful [and] immediate objective of induc[ing] a target

20   to violate the law."  <u>United States v. Hansen</u>, 599 U.S. 762, 783

21   (2023) (internal citations and quotation marks omitted).  The charges

22   here violate freedom of speech principles no more than charging a

23   conspiracy in which the defendants verbally agreed to traffic illegal

24   narcotics.

25       Additionally, defendant's argument mischaracterizes the charges

26   against him.  Defendant's investment reports were not issued in a

27   vacuum, but in the context of his broader market manipulation and

28   stock scalping scheme.  Read in their appropriate context,

defendant's tweets and reports were not acts of purely honest speech, since "even in the absence of a trust relationship," a defendant "cannot affirmatively tell a misleading half-truth about a material fact to a potential investor." United States v. Laurienti, 611 F.3d 530, 541 (9th Cir. 2010); see also United States v. Halbert, 640 F.2d 1000, 1007 (9th Cir. 1981) (per curiam) ("A defendant's activities can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved."_.

**F.   Defendant Fails To Articulate a Due Process Claim**

Defendant's invocation of the Fifth Amendment's Due Process Clause similarly fails.  Defendant cites the caselaw regarding unconstitutional vagueness, but those cases are orthogonal to the argument he raises here.  City of Chicago v. Morales, 527 U.S. 41 (1999), for example, articulated the (rare) circumstances under which a facial vagueness challenge could be brought to a criminal law.[7] Yet neither Morales nor any other case stands for the proposition that application of the criminal law to a novel factual circumstance is constitutionally suspect.  By that logic, without new legislation the government would be powerless to prosecute wrongdoers who use new technologies or devise innovative schemes.  Defendant does not assail the securities fraud statutes and regulations themselves, and so it must be up to a jury to decide whether defendant violated them.

In any event, defendant's assertion that this case blazes entirely new trails is incorrect.  As already stated, the prohibitions on scalping are well established in the caselaw.  See, e.g., Wenger, 427 F.3d at 854; Zweig, 594 F.2d at 1265-66.

---

[7] Morales was a plurality opinion, and its broader applicability is questionable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.    The False Statement Charge Suffers from No Defects

#### 1.    Count Nineteen Is Not Duplicitous

Defendant's false statement charge is not duplicitous. Tellingly, none of defendant's citations pertains to § 1001. This is for good reason; the law in this circuit and others holds that the unit of prosecution for a § 1001 violation is the vehicle through which the false statements were made, not each individual false statement. See, e.g., Fisher v. United States, 231 F.2d 99, 103 (9th Cir. 1956) (criticizing multiplicity of prosecuting separate § 1001 counts for each false statement in a single document rather than all the false statements in that document). Indeed, the rule is intended to benefit criminal defendants and arises from the rule of lenity and the notion that "it is difficult to assume Congress intended that a defendant found guilty of falsifying one document be exposed to two or more sentences." United States v. UCO Oil Co., 546 F.2d 833, 838 (9th Cir. 1976).

#### 2.    Count Nineteen States an Offense

A perjury conviction may not be predicated on a statement that is "literally true but not responsive to the question asked." Bronston v. United States, 409 U.S. 352, 353 (1973). Defendant is right on the general principle but wrong in its application.

"Bronston's rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." United States v. Camper, 384 F.3d 1073, 1076 (9th Cir. 2004). But "[d]ifferent rules govern statements that are ambiguous, in which the statement may be true according to one interpretation and false according to another." Id. Defendant's

23

1    arguments with respect to Count Nineteen fall, at best, into this

2    latter category.

3         "[T]he existence of some ambiguity in a falsely answered

4    question will not shield the respondent from a perjury or false

5    statement prosecution." Id.  Beyond those extreme cases where

6    ambiguity is fundamental to the question,[8] "[i]t is for the jury to

7    decide in such cases which construction the defendant placed on a

8    question." Id.  That is the case here under the most generous

9    reading of defendant's argument.  Defendant's contortion of the

10   obvious meaning of the two questions at issue rivals the most

11   seasoned yoga gurus.

12        When asked, "Do you share your report before it goes public with

13   [hedge funds]?" defendant falsely stated, "No, no, no, the only thing

14   I might do . . . I might double check a spreadsheet . . . . [I]t's

15   always done to make sure it's factually right."  Defendant's belated

16   attempt to interpret the question to refer only to reports in their

17   final form and not earlier drafts is untenable.  Defendant's own

18   answer, which refers to "double check[ing] a spreadsheet" only makes

19   sense if he understood the question to refer to drafts before the

20   final product.  Likewise, defendant's efforts to characterize this

21   question to refer to sharing the reports before they were published

22   to hedge funds is completely inconsistent with the context, which

23   pertained to defendant's direct communications with hedge funds.  Nor

24   would it make sense to discuss his publication of reports to hedge

25

26   _____

27        [8] A "question is fundamentally ambiguous" where "'men of
     ordinary intelligence' cannot arrive at a mutual understanding of its
     meaning." United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir.

28   2003) (per curiam) (citation omitted).  That is a far cry from the
     circumstances of this case.

1    funds, since he issued his reports publicly through his website and

2    Twitter account.  Ind. ¶ 2.  "The context of the question and other

3    extrinsic evidence relevant to the defendant's understanding of the

4    question may allow the finder of fact to conclude that the defendant

5    understood the question as the government did and, so understanding,

6    answered falsely."  Camper, 384 F.3d at 1076.  This reliance on

7    context and extrinsic evidence is precisely why the determination of

8    falsity is the province of the jury.  See United States v. McKenna,

9    327 F.3d 830, 841 (9th Cir. 2003).

10        With respect to his second lie -- that, in response to the

11   question, "When you check with other hedge funds that specialize in

12   the industry that you are looking at, is there compensation between

13   the two of you?" defendant responded "[n]ever . . . never, never,

14   never" -- defendant raises two unpersuasive points.  First, he claims

15   that use of the word "is" temporally limits the question so as not to

16   cover past conduct.  But that reading ignores the first clause of the

17   question, which through the use of "when" posits that the defendant

18   had checked with hedge funds at various times in the past.  And the

19   defendant's answer of "never" to this question confirms his

20   understanding that it applied to past conduct; his unambiguous and

21   repeated response "never" suggests he, as any reasonable listener,

22   understood the question to be general.  Second, though the question

23   described "compensation between the two of you," defendant now

24   asserts this can only mean benefits he paid to hedge funds.  Yet this

25   runs directly counter to the premise of the question: that defendant

26   received a benefit by providing advance notice to third parties of

27   his market-making behavior in exchange for a benefit.  Again,

28

defendant may renew his factual claims and arguments at trial, but
they are patently improper bases to dismiss the indictment.

**IV.  CONCLUSION**

For the above reasons, this Court should deny defendant's motion
to dismiss charges in the indictment in its entirety.

### **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for the United States, certifies this memorandum of points and authorities contains 6,932 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 18, 2025

                    /s/
                    ALEXANDER B. SCHWAB
                    Assistant United States Attorney