**SPERTUS, LANDES & JOSEPHS, LLP**
JAMES W. SPERTUS (Cal Bar No. 159825)
jspertus@spertuslaw.com
LINDSEY HAY (Cal Bar No. 311463)
lhay@spertuslaw.com
MARIO HOANG NGUYEN (Cal Bar No. 355543)
mnguyen@spertuslaw.com
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-cr-00456-TJH |
| v. | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| ANDREW LEFT, | Date:     May 5, 2025 |
| Defendant. | Time:     10:00 a.m. |
| | Ctrm:     9C |
| | Judge:    Hon. Terry J. Hatter, Jr. |

*REPLY BRIEF*

1

## TABLE OF CONTENTS

2
3

**INTRODUCTION** ................................................................................................ 1

**LEGAL STANDARD** .......................................................................................... 2

**DISCUSSION** ...................................................................................................... 2

    **I.**    **The Securities Fraud Charges Still Lack Essential Elements** ......... 2

        A.    *McNally* and Its Progeny Apply To "Federal Fraud Statutes" ............................................................. 2

        B.    Allegations of Scheme Liability Do Not Save The Indictment ................................................................. 5

        C.    No Actionable Omissions, Misrepresentations, or Half-Truths ..................................................................... 7

        D.    The Indictment Does Not Allege Materiality ................. 11

        E.    The Government's Intent Allegations Diverge And Are Deficient ................................................................. 13

    **II.**    **The Government Does Not Establish Domesticity Of Its Charges** ....................................................................... 14

    **III.**    **There Is No Substantial Interest For Compelling Left's Speech** ............................................................................. 15

    **IV.**    **The Government Cannot Overcome The Due Process Violation Here** .......................................................................... 16

    **V.**    **The False Statement Charge Is Fatally Flawed** .............. 17

        A.    Duplicity ............................................................................. 17

        B.    Fundamental Ambiguity ............................................. 17

**CONCLUSION** ................................................................................................... 19

**Page**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*REPLY BRIEF*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ciminelli v. United States*,
    598 U.S. 306 (2023) .................................................................. 3, 4

*Cleveland v. United States*,
    531 U.S. 12 (2000) ...................................................................... 2

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................... 5

*Durland v. United States*,
    161 U.S. 306 (1896) ...................................................................... 3

*Feldman v. Simkins Indus., Inc.*,
    492 F. Supp. 839 (N.D. Cal. 1980) .................................................... 8

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3d Cir. 2001) ...................................................... 8, 10

*Hammerschmidt v. United States*,
    265 U.S. 182 (1924) ...................................................................... 2

*McNally v. United States*,
    483 U.S. 350 (1987) ................................................................... 2, 3

*Melvin v. Brayshaw*,
    No. 19-cv-712-JGB-SPx, 2019 WL 6482220 (C.D. Cal. Oct. 3, 2019) ........... 14

*Neder v. United States*,
    527 U.S. 1 (1999) ......................................................................... 3

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004) .................................................. 8

*SEC v. Beck*,
    No. 2:22-cv-812, 2024 WL 1626280 (C.D. Cal. Mar. 26, 2024)..................... 10

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
    375 U.S. 180 (1963) ...................................................................... 8

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

iii

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*SEC v. Cherif*,
    933 F.2d 403 (7th Cir. 1991) ............................................................. 3

*SEC v. Corp. Rels. Grp.*,
    No. 6:99-cv-1222, 2003 WL 25570113 (M.D. Fla. Mar. 28, 2003) ................... 9

*SEC v. Daifotis*,
    No. 11-cv-137, 2011 WL 2183314 (N.D. Cal. June 6, 2011) ........................... 6

*SEC v. Fassari*,
    No. 21-cv-403, 2021 WL 2290576 (C.D. Cal. May 5, 2021) ........................... 11

*SEC v. Gallagher*,
    No. 21-cv-8739, 2023 WL 6276688 (S.D.N.Y. Sept. 26, 2023) ....................... 11

*SEC v. Govil*,
    86 F.4th 89 (2d Cir. 2023) ................................................................ 3

*SEC v. Huttoe*,
    No. 96-cv-2543, 1998 WL 34078092 (D.D.C. Sept. 14, 1998) ........................ 9

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................................. 6

*SEC v. Leslie*,
    No. 07-cv-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) ....................... 11

*SEC v. Lidingo Holdings, LLC*,
    No. 17-cv-1600, 2018 WL 2183999 (W.D. Wash. May 11, 2018) ................... 9

*SEC v. Lucent Techs., Inc.*,
    610 F. Supp. 2d 342 (D.N.J. 2009) ..................................................... 6

*SEC v. Pasternak*,
    561 F. Supp. 2d 459 (D.N.J. 2008) ..................................................... 5

*SEC v. Sullivan*,
    68 F. Supp. 3d 1367 (D. Colo. 2014) .................................................. 7

*SEC v. Thompson*,
    238 F. Supp. 3d 575 (S.D.N.Y. 2017) ................................................ 9

iv

*REPLY BRIEF*

*SEC v. Wang*,
    No. 13-cv-7553-JAK-SSx, 2015 WL 12656906
    (C.D. Cal. Aug. 18, 2015) ..................................................................... 15

*SEC v. World Cap. Mkt., Inc.*,
    864 F.3d 996 (9th Cir. 2017) ................................................................ 14

*Sullivan & Long, Inc. v. Scattered Corp.*,
    47 F.3d 857 (7th Cir. 1995) .................................................................... 5

*United States v. Alkaabi*,
    223 F. Supp. 2d 583 (D.N.J. 2002) ......................................................... 4

*United States v. Bonallo*,
    858 F.2d 1427 (9th Cir. 1988) ................................................................ 2

*United States v. Brandel*,
    853 F. App'x 88 (9th Cir. 2021) ........................................................... 13

*United States v. Buckley*,
    689 F.2d 893 (9th Cir. 1982) .................................................................. 6

*United States v. Camper*,
    384 F.3d 1073 (9th Cir. 2004) .............................................................. 17

*United States v. Cannistraro*,
    800 F. Supp. 30 (D.N.J. 1992) ............................................................. 11

*United States v. Chanu*,
    40 F.4th 528 (7th Cir. 2022) ................................................................... 3

*United States v. Charnay*,
    537 F.2d 341 (9th Cir. 1976) .................................................................. 6

*United States v. Culliton*,
    328 F.3d 1074 (9th Cir. 2003) .............................................................. 17

*United States v. Dilworth*,
    No. 10-cr-730, 2011 WL 6179278 (D.N.J. Dec. 12, 2011) ................ 17

*United States v. Fox*,
    286 F. Supp. 3d 1219 (D. Kan. 2018) .................................................. 16

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*REPLY BRIEF*

*United States v. Gaines*,
　　No. 21-cr-266, 2022 WL 204415 (D. Ariz. Jan. 24, 2022) .............................. 15

*United States v. Georgiou*,
　　777 F.3d 125 (3d Cir. 2015) ................................................................. 15

*United States v. Hockings*,
　　129 F.3d 1069 (9th Cir. 1997) ............................................................. 16

*United States v. Hogue*,
　　752 F.2d 1503 (9th Cir. 1985) ............................................................. 16

*United States v. Hussain*,
　　972 F.3d 1138 (9th Cir. 2020) ............................................................. 13

*United States v. Keuylian*,
　　23 F. Supp. 3d 1126 (C.D. Cal. 2014) .................................................. 7

*United States v. Lanier*,
　　520 U.S. 259 (1997) .......................................................................... 16

*United States v. Milwitt*,
　　475 F.3d 1150 (9th Cir. 2007) .............................................................. 3

*United States v. O'Donnell*,
　　608 F.3d 546 (9th Cir. 2010) ................................................................ 2

*United States v. Peel*,
　　No. 2:14-cr-106, 2014 WL 3057523 (E.D. Cal. July 7, 2014) ................... 6

*United States v. Phillips*,
　　690 F. Supp. 3d 268 (S.D.N.Y. 2023) .................................................. 14

*United States v. Ramirez*,
　　710 F.2d 535 (9th Cir. 1983) .............................................................. 14

*United States v. Saathoff*,
　　708 F. Supp. 2d 1020 (S.D. Cal. 2010) ............................................. 5, 16

*United States v. Schena*,
　　No. 5:20-cr-425, 2022 WL 2910185 (N.D. Cal. July 23, 2022) ................ 13

*United States v. Shipsey*,
　　190 F.3d 1081 (9th Cir. 1999) .............................................................. 2

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

vi

*REPLY BRIEF*

*United States v. Telink, Inc.*,
  702 F. Supp. 805 (S.D. Cal. 1988) .................................................................... 5

*United States v. W.R. Grace*,
  429 F. Supp. 2d 1207 (D. Mont. 2006) ............................................................ 11

*United States v. Wenger*,
  427 F.3d 840 (10th Cir. 2005) ........................................................................... 9

*United States v. Wey*,
  No. 15-cr-611, 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) .............................. 3

*United States v. Yates*,
  16 F.4th 256 (9th Cir. 2021) ............................................................................... 3

**Statutes**

18 U.S.C. § 371 ........................................................................................................ 2

18 U.S.C. § 1001 .................................................................................................... 17

**Other Authorities**

Thomas R. Millar et al., *Open Market Manipulation: The Dangers of
  Policing Thought*, 39 No. 10 Futures & Derivatives L. Rep. NL 2
  (Nov. 2019) ......................................................................................................... 8

U.S. Const. amend. I ......................................................................................... 1, 16

U.S. Const. amends. V and VI ............................................................................... 5

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*REPLY BRIEF*

## **INTRODUCTION**

The government frames this case as a "classic securities fraud scheme," but fails to cite a *single* case that resembles it. The Indictment charges a pump-and-dump scheme absent the hallmarks of fraud, such as penny stocks, anonymous promoters, false statements about companies, or coordinated trading. Instead, the government charges Andrew Left *solely* for expressing price opinions about 17 securities, which it claims were false *only* because Left traded at different prices than his opinions.

*Omnicare* requires allegations that would establish Left's opinions were objectively false to survive dismissal. Left's personal trading alone is insufficient. Instead, the government must allege the 17 securities never reached Left's opined prices, but it neither does that nor alleges the stocks' prices when the Indictment was filed. For example, Left tweeted favorably in 2018 about the future stock prices for Tesla (Count 6), Nvidia (Count 7), and Facebook (Count 9), but the Indictment fails to allege how the prices of those stocks fared between 2018 and the date the Indictment was filed. Thus, the Indictment does not charge "a classic securities fraud scheme." Rather, it is the first in history to allege a pump-and-dump scheme based on opinions about large capitalization companies, without any false statements about those companies, anonymous posting, or other hallmarks of fraud. On these novel facts, strict compliance with pleading requirements is necessary more than ever.

The Indictment is legally defective because it fails to allege: (1) a scheme to defraud anyone of property, (2) market pricing sufficient to determine if Left's opinions were objectively false, (3) materiality, and (4) fraudulent intent. The charges also improperly apply laws extraterritorially, infringe upon First Amendment protections, and violate due process. The false statement count fails too because it is duplicitous and based on fundamentally ambiguous questions. Respectfully, the Court should grant the Motion and dismiss the Indictment.

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1

## LEGAL STANDARD

Contrary to the government's claim, "an indictment must do more than simply repeat the language of the criminal statute." (*U.S. v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010) (quoting *Russell v. U.S.*, 369 U.S. 749, 764 (1962)).) "An indictment must be specific in its charges and necessary allegations cannot be left to inference…." (*Id.* (quoting *Williams v. U.S.*, 265 F.2d 214, 218 (9th Cir. 1959)).) Accordingly, "[a]n indictment must include 'a statement of facts and circumstances that will inform the accused of the specific offense with which he is charged.'" (*U.S. v. Shipsey*, 190 F.3d 1081, 1087 (9th Cir. 1999) (quoting *U.S. v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (per curiam)).) "When construing the meaning of an indictment, the description of the alleged conduct is far more critical than the indictment's prefatory language or its citation of a particular provision of a statute." (*U.S. v. Bonallo*, 858 F.2d 1427, 1430 (9th Cir. 1988).)

## DISCUSSION

**I.    The Securities Fraud Charges Still Lack Essential Elements**

**A.    *McNally* and Its Progeny Apply To "Federal Fraud Statutes"**

The government brushes away *McNally v. U.S.* (483 U.S. 350, 360 (1987)) and its progeny, claiming they have "no semblance" to the charges in Count 1, and that Counts 2 through 18 are immune to *McNally* because Title 15 has "no analogous requirement that the object of the scheme be money or property." (Opp., ECF No. 42-2 at 4–6.) The government misunderstands *McNally*.

*McNally* is not cabined to Title 18 or statutes with the phrase "money or property." *McNally* held the phrase "to defraud," present in both Section 1348 and Rule 10b-5, refers in common law to "wronging one in his property rights." (*Cleveland v. U.S.*, 531 U.S. 12, 19 (2000).) *McNally* relied on *Hammerschmidt v. U.S.* (265 U.S. 182, 188 (1924)), which "concerned the scope of the predecessor of 18 U.S.C. § 371," and does not contain "money or property" language. (483 U.S. at

*REPLY BRIEF*

358 n.8;[1] *see U.S. v. Milwitt*, 475 F.3d 1150, 1156, 1159 (9th Cir. 2007) (reversing conviction by applying *McNally* to bankruptcy fraud statute which does not contain "money or property" language.) "Where Congress uses terms that have accumulated settled meaning under…the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." (*Neder v. U.S.*, 527 U.S. 1, 21 (1999) (citation omitted).) Here, Count 1 arises under Section 1348(1), which proscribes any "scheme or artifice to defraud," and Counts 2 through 18 use nearly identical wording from Rule 10b-5. (*See U.S. v. Chanu*, 40 F.4th 528, 541 (7th Cir. 2022) (establishing Section 1348 was modeled on the mail and wire fraud statutes); *U.S. v. Wey*, No. 15-cr-611, 2017 WL 237651, at *4 (S.D.N.Y. Jan. 18, 2017) (holding Rule 10b-5 and Section 1348 "expressly criminalize 'scheme[s]' to 'defraud.'").) Accordingly, the courts in *Greenlaw* and *Constantinescu* applied *McNally* to Section 1348 (Mot., ECF No. 34-1 at 3 n.1, 5), and others have applied it to Rule 10b-5 (*see SEC v. Govil*, 86 F.4th 89, 105 (2d Cir. 2023); *SEC v. Cherif*, 933 F.2d 403, 412 (7th Cir. 1991)). Therefore, *McNally* and its progeny, *Ciminelli v. U.S.* (598 U.S. 306 (2023)) and *U.S. v. Yates* (16 F.4th 256 (9th Cir. 2021)),[2] apply here.

As such, the issue presented is whether the Indictment alleges a scheme to deprive people of *money and property* or to deprive people of *information*. The Indictment alleges Left intended to trade stocks for profit, and concealed that he personally traded at different times and prices than the government's reading of his

---

[1] *McNally* also explained that *Durland v. U.S.* (161 U.S. 306, 313 (1896)) held "the statute's purpose is protecting property rights." (483 U.S. at 357.) Although "for obtaining money or property" was added to the statute, the Court clarified "[t]he codification of the holding in *Durland* in 1909 does not indicate that Congress was departing from this common understanding." (*Id.* at 358–59.)

[2] Indeed, *Yates* discussed a fourth object of the charged scheme that was abandoned on appeal, noting, the defendants "correctly point out that an increase in the value of stock that they owned could not be the object of bank fraud because it would not deprive the bank of any property interest." (16 F.4th at 264.)

3

*REPLY BRIEF*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1    published opinions. This is not a deprivation of *money*—it is, at best, a scheme to

2    deprive readers of "valuable economic information needed to make discretionary

3    economic decisions" and *Ciminelli* is clear that federal fraud statutes do not

4    proscribe this type of deprivation.[3] Thus, the government attempts to argue the

5    Indictment "plainly articulates" that "the object of defendant's scheme was

6    investors' money or stock," "defendant disseminated deceptive tweets and reports

7    to fraudulently induce investors to buy or sell stock," and "the entire purpose of the

8    scheme is to manipulate the price of the securities so that defendant could cause

9    investors to buy or sell stock." (Opp. at 4.) Yet the Indictment contains <u>no</u> such

10   allegations, and fact-checking the Opposition reveals this discrepancy. The

11   government cannot remediate a defective Indictment through its Opposition. (*U.S.*

12   *v. Alkaabi*, 223 F. Supp. 2d 583, 589 (D.N.J. 2002).)

13          The government then tries to argue the object of the scheme was money and

14   property by cobbling together allegations that Left "profited from his advance

15   knowledge," "closed his positions to capitalize on the temporary price movement,"

16   "profited by taking advantage of the intended short-term movement in the Targeted

17   Security's price," "profitably exit[ed] his position as quickly as possible," "trade[d]

18   in a manner designed to exploit the temporary price volatility," and "engaged in

19   media campaigns." (Indictment, ECF No. 1 ¶¶7, 19(c), (e)(v), (f)–(g).) But none of

20   these allegations involve *depriving* anyone of money or property, and *obtaining*

21   money or property is not the same. "[C]apitalizing" and "profiting" from stock

22   trading without more is a perfectly legal objective. (*See Sullivan & Long, Inc. v.*

23

24          [3] *Ciminelli* explicitly rejected that shareholders' access to information is a
     property interest by quoting *U.S. v. Wallach* (935 F.2d 445, 463 (2d Cir. 1991)) to

25   state, "the right to complete and accurate information is one of the most essential

26   sticks in the bundle of rights that comprise a stockholder's property interest," and
     concluding, "that metaphor—whatever its merits in other contexts—cannot

27   compensate for the absence of an interest that itself 'has long been recognized as

28   property[.]'" (*Id.* at 314 & n.4 (quoting *Carpenter v. U.S.*, 484 U.S. 19, 26 (1987)).)

*REPLY BRIEF*

1    *Scattered Corp.*, 47 F.3d 857, 860 (7th Cir. 1995) ("There is nothing unlawful
2    about trading on an information advantage, provided that it is not based on inside
3    information."); *SEC v. Pasternak*, 561 F. Supp. 2d 459, 505 (D.N.J. 2008) ("[T]he
4    Court rejects the SEC's argument that Joseph's profits…necessarily indicate that
5    Joseph engaged in fraudulent or manipulative conduct in violation of the securities
6    laws.").) Merely "[l]abeling [Left's trading] as fraudulent, as does the indictment,
7    does not suggest criminality." (*U.S. v. Saathoff*, 708 F. Supp. 2d 1020, 1030 (S.D.
8    Cal. 2010).) Instead, "[a]n indictment must allege with specificity how the property
9    loss occurred in order to safeguard constitutional rights guaranteed by the Fifth and
10   Sixth Amendments." (*U.S. v. Telink, Inc.*, 702 F. Supp. 805, 808 (S.D. Cal. 1988).)

11          Trading stock does not deprive the counterparty of property. When Left
12   trades "the [counterparty] has suffered no loss; the inflated purchase payment is
13   offset by ownership of a share that *at that instant* possesses equivalent value."
14   (*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).) If "the purchaser
15   subsequently resells such shares, even at a lower price, that lower price may reflect,
16   not the earlier misrepresentation, but changed economic circumstances, changed
17   investor expectations, new industry-specific or firm-specific facts, conditions, or
18   other events, which taken separately or together account for some or all of that
19   lower price." (*Id.* at 342–43.) The Indictment therefore fails to "plainly articulate" a
20   scheme by Left to deprive readers of money or property, and conclusory allegations
21   in the government's Opposition cannot save the Indictment from dismissal.

22          **B.     Allegations of Scheme Liability Do Not Save The Indictment**

23          The government claims "scheme liability" under Section 1348(1) and Rule
24   10b-5(a) and (c) immunize it from having to plead misrepresentations in Counts 1
25   through 18. (Opp. at 6–8.) It argues the Indictment "exceeds the pleading
26   requirements" for Counts 5 (PTE), 14 (LK), and 15 (NVAX), despite alleging
27   *nothing* about these securities, including if they were ever traded. (Opp. at 14–15.)

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

5

1    However, "[i]ndictments alleging a scheme to defraud must provide

2   sufficient facts to fulfill the purposes of an indictment." (*U.S. v. Buckley*, 689 F.2d

3   893, 897 (9th Cir. 1982) (citation omitted).) They "must descend to particulars."

4   (*U.S. v. Peel*, No. 2:14-cr-106, 2014 WL 3057523, at *2 (E.D. Cal. July 7, 2014)

5   (quoting *Russell*, 369 U.S. at 765).) The government must allege conduct that has a

6   "deceptive purpose or effect," and not "a principal legitimate business purpose" or

7   "consistent with the defendants' normal course of business." (*SEC v. Daifotis*, No.

8   11-cv-137, 2011 WL 2183314, at *9 (N.D. Cal. June 6, 2011) (citation omitted).[4])

9    The six types of conduct the government points to here are not deceptive.

10   (Opp. at 7.) First, the Indictment itself alleges Left was "registered as an investment

11   advisor in California" and told the media that he managed "only his own wealth."

12   (Mot. at 10.) Second, nowhere in the Indictment does Left state he was

13   "independent from outside third-party influence and bias." (Mot. at 7–8, 11; *see

14   SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 360 (D.N.J. 2009) ("If the

15   investing public has no knowledge that an issuer committed an act because the

16   entity has not conveyed any information about that act (nor withheld pertinent

17   information that would make a public statement about that act misleading), there

18   has been no deception because no false impression was created.").) Third, it is

19   inconsistent to allege Left deceptively "conceal[ed] his relationship with a third-

20   party hedge fund" (Opp. at 7), while also alleging he "disseminated 'investor

21   letters' to members of the news media to bolster his public reputation by advancing

22   the false pretense that he managed a hedge fund" (Indictment ¶75). Furthermore,

23   "[t]here is nothing inherently deceptive about structuring a transaction with a

24   counterparty" like a hedge fund. (*SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y.

---

25       [4] Despite citing 15 civil cases itself, the government attacks Left's use of
26   them as "inapplicable in the criminal context." (Opp. at 13–14 & n.4, 20.) However,
27   "precedents established in civil cases interpreting Rule 10b-5 are applicable in
     criminal prosecutions under the Rule." (*U.S. v. Charnay*, 537 F.2d 341, 348 (9th
28   Cir. 1976).) No proposition Left cited relied on heightened pleading standards.

*REPLY BRIEF*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

2011).) Fourth, lying to agents and deleting communications, if true, are still not deceptive *to Left's readers*.[5] (*See* Mot. at 8, 14–15; *SEC v. Sullivan*, 68 F. Supp. 3d 1367, 1378 (D. Colo. 2014) ("Although circumventing an SEC investigation and personally benefitting from the profits of a fraudulent scheme are dishonest actions, neither act clearly contributed to the operation of the underlying fraud.").) Fifth, Left's stock price opinions are not deceptive merely because he traded before they were reached. (*Infra* § I(C).) None of this conduct establishes scheme liability.

Even if all this conduct occurred, the government alleges it had *one* purpose—to bolster Left's "credibility" when making public statements. (Indictment ¶7 ("[F]or the scheme to work, defendant LEFT knew that investors needed to believe that the recommendations and positions he set forth were sincerely maintained").) The government does not allege deceptive conduct like wash trading or interpositioning. Instead, the *entire* alleged scheme is based on Left "using the Citron Twitter Account to generate 'catalysts[.]'" (Indictment ¶7.) Therefore, the government's failure to allege misrepresentations is fatal to pleading scheme liability. (*U.S. v. Keuylian*, 23 F. Supp. 3d 1126, 1128 (C.D. Cal. 2014).)

## C.    No Actionable Omissions, Misrepresentations, or Half-Truths

The government does not oppose dismissal of any omissions-based theory, and it concedes that pleading a false opinion for its misrepresentation and half-truth theories to survive requires allegations that Left: (1) "did not hold the purported belief in question" **and** (2) "the belief was objectively untrue." (Opp. at 9–10.) It claims Left trading at prices that differed from his stock price opinions "demonstrates that he did not genuinely believe his own valuation claims." (Opp. at 10.) Even if it were correct (it is not), the government fails to allege the second

---

[5] The Indictment alleges Left "caused the deletion of electronic communications" in his Twitter account (Indictment ¶106), but the government tries to amend this allegation to claim he "delet[ed] his twitter account." (Opp. at 7.)

7

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1  requirement—Left's belief was "objectively untrue." Therefore, its Opposition fails

2  to save a theory based on misrepresentations or half-truths.

3      First, the fact that Left traded stocks at prices that differed from his opinions

4  does not establish that he did not hold the belief in question. (*GFL Advantage Fund,*

5  *Ltd. v. Colkitt*, 272 F.3d 189, 210 (3d Cir. 2001) ("To infer that these 'premature'

6  short sales were executed to manipulate prices, however, would be an unreasonable

7  leap.").[6]) The Indictment alleges Left's "target price" opinions were a "projection

8  of the Targeted Security's future price." (Indictment ¶19(e)(iv).) Left's trading in

9  the *present* thus cannot demonstrate he did not believe his "projection" of a

10  security's "future" price. (*See In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d

11  477, 493 (S.D.N.Y. 2004) ("Grubman's Buy recommendations and target prices

12  can't be characterized as false or misleading unless his actual opinion was

13  otherwise, and merely alleging 'undisclosed motivations' that *might* lead someone

14  to misrepresent his true opinion does not suffice."); *Feldman v. Simkins Indus., Inc.*,

15  492 F. Supp. 839, 846 (N.D. Cal. 1980) (finding "that [defendant] told brokers and

16  reporters who inquired that he considered the $15 per share offer insufficient, while

17  simultaneously selling at that price" was "insufficient to support a finding of market

18  manipulation, let alone fraud or misrepresentation.").)

19      The inapposite "scalping" cases the government cites highlight how defective

20  the allegations here are in contrast, because those cases involved thinly traded

21  penny stock schemes where defendants clearly did not hold their published beliefs

22  because they were being *paid to publish*, which triggers statutory disclosure duties,

23

24      [6] The same is true of market orders. (Thomas R. Millar et al., *Open Market

25  Manipulation: The Dangers of Policing Thought*, 39 No. 10 Futures & Derivatives

26  L. Rep. NL 2 (Nov. 2019) ("Open market orders communicate a single transparent

27  and objective piece of information: the willingness of a market participant to buy or

28  sell a specified quantity of a product at a defined price. They communicate no information at all about the market participant's intent or strategy in placing the order.").)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

8

*REPLY BRIEF*

and is not at issue here. (*See SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 181, 201 (1963) (involving "the Investment Advisers Act of 1940" establishing an "adviser's fiduciary relationship to his clients"); *U.S. v. Wenger*, 427 F.3d 840, 843–44, 852, 854 (10th Cir. 2005) (involving "penny stocks" scheme where radio host agreed "to accept 5.5 million shares" for promoting a company, triggering "disclosure provisions of" Section 17(b) "requir[ing] him to disclose that he received payment for promoting a security," which he "disclosed (inaccurately)"); *SEC v. Lidingo Holdings, LLC*, No. 17-cv-1600, 2018 WL 2183999, at *7–9 (W.D. Wash. May 11, 2018) (alleging defendant "entered into contracts with issuers" to write articles about their stock using "fake aliases with fake credentials" that "falsely stat[ed] they had received no compensation" despite being paid on a "per-article basis" and having "a secret side agreement" with issuers "about stock price goals" resulting in "bonuses and stock option grants when Lidingo reached certain goals"); *SEC v. Thompson*, 238 F. Supp. 3d 575, 598–600 & n.12 (S.D.N.Y. 2017) (involving "penny stock" scheme where defendants misrepresented "receiv[ing] more than 3 million shares" in companies they promoted and that "their own undisclosed trading contributed to much of the favorable price movements"); *SEC v. Corp. Rels. Grp.*, No. 6:99-cv-1222, 2003 WL 25570113, at *1–2 (M.D. Fla. Mar. 28, 2003) (alleging "promotional services in exchange for monetary compensation, stock, or both" while "act[ing] as a securities broker" and "securities dealers, without the required registrations"); *SEC v. Huttoe*, No. 96-cv-2543, 1998 WL 34078092, at *5 (D.D.C. Sept. 14, 1998) (alleging "companies paid [defendants] with stock" including "unregistered" shares, "in exchange for articles promoting their stock" in paid subscription newsletter about "penny stock or small capitalization companies").)

Second, the government fails to allege objective falsity. The Indictment never alleges that Left's target price opinions were "false." The Indictment and Opposition allege Left's target price opinions were merely "extreme." (Opp. at 1;

9

---

*REPLY BRIEF*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Indictment ¶19(e)(iv).) Because the Indictment alleges Left's "target price" opinions were a "projection" of a stock's "future price," it cannot plead objective falsity without alleging Left's opinions were not reached, which the government *never* does. (*Id.*) Indeed, many of the charged statements do not even include "target price" opinions. Nor does the Indictment allege Left published false information *about a company*. The government responds, "none of the securities offenses charged require that defendant made a false statement about the securities themselves." (Opp. at 13.[7]) However, given that the Indictment fails to allege that Left's target price opinions were false, the government must allege some misrepresentation to state an offense, and "conveying negative information about a firm does not constitute market manipulation unless the information is untruthful." (*GFL Advantage*, 272 F.3d at 208.) Thus, without alleging false statements about a company, the Indictment fails to plead misrepresentations or half-truths.

Conversely, the government's cited "scalping" cases are inapplicable and demonstrate the deficiencies in the allegations here, because those cases involved objectively false misrepresentations, explicit recommendations, or other manipulative trading not alleged here. (*See SEC v. Beck*, No. 2:22-cv-812, 2024 WL 1626280, at *2–3 (C.D. Cal. Mar. 26, 2024) (alleging defendant "recommended certain 'penny stocks' to his followers" using statements like "'TURN $5k into $100K'; 'EXPECT MEGA PROFITS ABOVE 2,000%+';"

---

[7] The government cites *Zweig v. Hearst Corp.* for this proposition. However, *Zweig* involved a defendant who purchased a company's "stock at a discount" and published an "article contain[ing] several *erroneous* statements that cast the company in a more favorable light than it deserved" based on "*material misrepresentations and omissions* in an interview" with the company's directors, which was reprinted as an advertisement in a publication the defendant had an undisclosed financial interest in. (594 F.2d 1261, 1262–66 (9th Cir. 1979) (emphasis added).) *Zweig*'s holding is no longer good law after *Hollinger v. Titan Cap. Corp.*, cited it and expressly "put to rest the 'flexible duty standard'" upon which *Zweig* rests. (914 F.2d 1564, 1570 & n.9–10 (9th Cir. 1990).)

10

*REPLY BRIEF*

1   "'IT'S GUARANTEED TO GO UP 10% A DAY'" and "paid a third party to post

2   messages about the stock" without disclosing they owned stock); *SEC v. Gallagher*,

3   No. 21-cv-8739, 2023 WL 6276688, at *1–2, 11 (S.D.N.Y. Sept. 26, 2023)

4   (involving "frontloading," "marking the close," informing "users in private chat

5   rooms that they should start acquiring shares" to "increase[] the volume of trading

6   and create[] an upward looking trend" prior to tweeting recommendations about

7   "penny stocks" like "Buy buy buy and HOL" and "buy hold get rich IMO," while

8   "includ[ing] false information about the issuer"); *SEC v. Fassari*, No. 21-cv-403,

9   2021 WL 2290576, at *5–6 (C.D. Cal. May 5, 2021) (involving "false statements

10  regarding (1) ARCS' operational facilities, (2) ARCS' planned buyback of 500

11  million shares, (3) ARCS' investment of $30 million into its facilities; (4) ARCS'

12  licensing status, and (5) Fassari's possession of ARCS revenue figures"); *U.S. v.*

13  *Cannistraro*, 800 F. Supp. 30, 37–44 (D.N.J. 1992) (involving "aftermarket

14  trading" on "over-the-counter markets" related to an IPO by using "nominee

15  brokerage accounts…in the names of relatives and Cayman Islands individuals and

16  entities" and "brib[ing]…Fund managers to buy large blocks of…securities" while

17  providing shares "in exchange" for preparing "favorable research reports").)

### D.    The Indictment Does Not Allege Materiality

19      The government argues Left misrepresented "his stock valuations and

20  trading" which was material because it "concerned one of the most essential

21  elements of a securities transaction—the price." (Opp. at 2, 17–18.) The

22  government not only misapplies the "nature-of-the-bargain" standard, but its

23  Opposition also cannot remedy the Indictment's dearth of materiality allegations.

24      "[M]ateriality must be alleged in the indictment." (*U.S. v. W.R. Grace*, 429 F.

25  Supp. 2d 1207, 1246 (D. Mont. 2006) (quoting *U.S. v. Omer*, 395 F.3d 1087, 1089

26  (9th Cir. 2005)).) "[I]nsignificant misstatements are not material as a matter of

27  law." (*SEC v. Leslie*, No. 07-cv-3444, 2010 WL 2991038, at *30 (N.D. Cal. July

28  29, 2010).) Other than a conclusory allegation that one statement by Left was

11

*REPLY BRIEF*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

"materially misleading," the Indictment does not allege that any misrepresentation went to the "nature-of-the-bargain" such that it was material to "the reasonable investor." (Indictment ¶56.) This deficiency alone warrants dismissal.

The government selectively quotes *U.S. v. Milheiser* to contend Left's stock price opinions were material because they were "directed to the quality, adequacy or price of the goods themselves…[where] the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." (98 F.4th 935, 943 (9th Cir. 2024).) However, *Milheiser* later clarifies "[w]hether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue[,]" but the "nature of the bargain requirement properly excludes from liability cases in which a defendant's misrepresentations about collateral matters may have led to the transaction but the buyer still got the product that she expected **at the price she expected.**" (*Id.* at 944 (emphasis added).) Milheiser not only lied to victims about being their "regular supplier of toner," but he also "falsely state[d] that the price of toner had increased" and "the business could lock in the old price by purchasing more toner that day." (*Id.* at 938.) Despite Milheiser's lies about *himself* and the toner's *price*, "[t]here was no evidence presented at trial suggesting that any businesses did not receive the toner or that any of the toner had defects." (*Id.* at 939.) Accordingly, the Ninth Circuit held Milheiser's lies about his *identity* and the transaction *price* were still not essential-to-the-bargain because victims received the product at the price they expected.

As this Court explained in *U.S. v. Alladawi*, misrepresentations do not go to nature-of-the-bargain when "a victim's funds [are] diverted to an unqualified party because of deception…so long as the funds that were diverted were still used for their allocated purpose[.]" (707 F. Supp. 920, 930 (C.D. Cal. 2023) (citations omitted).) However, a misrepresentation goes to nature-of-the-bargain "when a victim is deprived of deciding how to use that money on a substantive basis—such as when money allocated for a particular purpose does not go to support that cause

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

12

*REPLY BRIEF*

1   because of deception[.]" (*Id.*) Because every reader received the securities they

2   purchased or proceeds from the securities they sold, Left's alleged

3   misrepresentations do not go to the nature-of-the-bargain.

## E.    The Government's Intent Allegations Diverge And Are Deficient

5        The government argues it adequately alleged intent because "'[i]ntent to

6   harm' is not an element" of Rule 10b-5, and Left "improperly dispute[s] the factual

7   allegations[.]" (Opp. at 5, 19.) These contentions fail to respond to Left's Motion.

8        Securities fraud requires an intent to defraud. Under Rule 10b-5, "[t]he

9   Government must prove that Defendant *willfully and knowingly* employed a scheme

10  *to defraud investors.*" (*U.S. v. Schena*, No. 5:20-cr-425, 2022 WL 2910185, at *12

11  (N.D. Cal. July 23, 2022) (emphasis added); *see U.S. v. Brandel*, 853 F. App'x 88,

12  91 (9th Cir. 2021).) Under Section 1348, the government must prove an "intent to

13  defraud[.]" (*U.S. v. Hussain*, 972 F.3d 1138, 1146 (9th Cir. 2020).) Following the

14  Ninth Circuit's decision in *U.S. v. Miller*, the intent to defraud requires "the intent

15  to deceive *and* cheat[.]" (953 F.3d 1095, 1103 (9th Cir. 2020).)

16       The government fails to allege Left intended to *cheat readers* of property.

17  The allegations regarding encrypted messaging, deleting communications, and false

18  statements do not demonstrate an intent to *cheat readers*, who are the alleged

19  victims of Left's opinions. In *U.S. v. Finnerty*, the government alleged the

20  defendant's lies during testimony before the NYSE and pressuring of a coworker to

21  do the same demonstrated "consciousness of guilt" in a Rule 10b-5 prosecution.

22  (533 F.3d 143, 150–51 (2d Cir. 2008).) The Second Circuit rejected that argument

23  because "an awareness of peril, a guilty conscience or an impulse to cover one's

24  tracks does not bespeak criminally fraudulent conduct within the context of the

25  securities laws." (*Id.*) The Indictment here too alleges an intent to *deceive the*

26  *government*—not to *cheat* Left's *readers*—and this divergence warrants dismissal.

27

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

13

II.    <u>**The Government Does Not Establish Domesticity Of Its Charges**</u>

Because Left raised due process and venue challenges related to Namaste, the government bears the burden of demonstrating the domesticity of its charges. (Mot. at 17.) Its Opposition fails to satisfy that burden.

The government concedes Namaste cannot support its Section 1348 charge, yet claims Paragraph 15 "makes clear that it is not relying on Namaste[.]" (Opp. at 20.) But Paragraph 15 names "Namaste Technologies Inc. ('NXTTF');" and the government admits Namaste "is included in Count One to show" intent, falsity, and concealment. (*Id.*) Thus, Count One should be dismissed as extraterritorial.[8]

The government argues Namaste can support Section 10(b) because it applies to "the means and instrumentalities of interstate commerce[.]" (*Id.*) But the Indictment never alleges a means or instrumentality of interstate commerce related to Namaste nor does the government point to any such allegation in the Indictment. Count Four thus warrants dismissal because it is missing this essential element too.

The government also contends "the appropriate test" for extraterritoriality is the "conducts or effects" test following the 2010 Dodd-Frank Act. (Opp. at 21.[9]) However, no binding court has held Dodd-Frank supersedes *Morrison*. Indeed, the Ninth Circuit applied *Morrison* and the "irrevocable liability" test in an SEC-brought action in 2017, despite the SEC's similar argument. (*SEC v. World Cap. Mkt., Inc.*, 864 F.3d 996, 1008 & n.10 (9th Cir. 2017).) Even if Dodd-Frank supersedes *Morrison*, "extraterritorial application of [a] statute must still comply with the Due Process Clause." (*U.S. v. Phillips*, 690 F. Supp. 3d 268, 283 (S.D.N.Y.

---

[8] At minimum these allegations should be stricken as surplusage. (*U.S. v. Ramirez*, 710 F.2d 535, 544–45 (9th Cir. 1983).)

[9] In the government's cited civil case, the plaintiffs "fail[ed] to persuade the Court that they may evade *Morrison*," and "the Court [wa]s skeptical Plaintiffs could allege…irrevocable liability accrue[d]" in the U.S. because "both the issuer and the purchaser are Canadian," like the allegations here. (*Melvin v. Brayshaw*, No. 19-cv-712-JGB-SPx, 2019 WL 6482220, at *4 (C.D. Cal. Oct. 3, 2019).)

14

*REPLY BRIEF*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

2023).) As such, courts continue to apply *Morrison* after Dodd-Frank. (*See, e.g.*, *U.S. v. Georgiou*, 777 F.3d 125, 134 (3d Cir. 2015); *U.S. v. Gaines*, No. 21-cr-266, 2022 WL 204415, at *3 (D. Ariz. Jan. 24, 2022).)

Here, the government does not deny that Hedge Fund A and Namaste are *Canadian* companies, BNN is a *Canadian* broadcast, "$N" is Namaste's *Canadian* ticker symbol, and that it selectively quoted Left's September 14th tweet in Paragraph 96 of the Indictment to remove foreign references. Instead, it points to four other allegations. First, that Left is "a California resident[.]" (Opp. at 21.) But "citizenship or residency does not affect where a transaction occurs[.]" (*SEC v. Wang*, No. 13-cv-7553-JAK-SSx, 2015 WL 12656906, at *10 (C.D. Cal. Aug. 18, 2015).) Second, that Namaste is "a U.S. over-the-counter stock[.]" (Opp. at 21.) This does not establish domesticity. (Mot. at 16.) Third, that Left's October 4th tweet references "$NXTTF," but the Opposition uses ellipses to again omit references to the Canadian ticker symbol "$N" in the tweet. (Opp. at 20.) The Indictment also never alleges if and when NXTTF shares were traded. Paragraph 95 alleges an agreement between Left and Hedge Fund A only. Fourth, the government argues Left stated he would "keep shorting NXTTF until it goes to zero" on BNN. (Opp. at 20–21.) However, like its selective quoting of Left's tweets, the government is well-aware Left actually said **"Namaste"** on BNN and did not spell out "NXTTF" as the government improperly substituted. The government has an ethical duty to correct this inaccuracy. Regardless of the test applied, the government fails to establish domesticity of its Namaste charges.

## III.   <u>There Is No Substantial Interest For Compelling Left's Speech</u>

The government contends speech inducing a violation of law is not constitutionally protected. (Opp. at 21–22.) This mischaracterizes Left's argument.

The charges here stem from Left allegedly "ma[king] public statements online, in interviews, and on cable news about the positions he held in targeted securities **while omitting that he intended to…close out his positions**

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1   **immediately after publication**[.]" (Opp. at 11 (emphasis added).) The charges

2   therefore seek to compel Left to disclose his personal trading when publishing

3   opinions about securities. However, "the First Amendment 'prohibits the

4   government from telling people what they must say.'" (*U.S. v. Fox*, 286 F. Supp. 3d

5   1219, 1222 (D. Kan. 2018) (quoting *Agency for Int'l Dev. v. Alliance for Open*

6   *Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).) "A law satisfies strict scrutiny when

7   the government proves that the law is narrowly tailored to serve compelling

8   governmental interests." (*Id.* at 1223 (citing *Reed v. Town of Gilbert, Ariz.*, 576

9   U.S. 155, 171 (2015)).) Because the government has not articulated a substantial

10  government, the First Amendment necessitates dismissal of the charges here.

11  **IV.    The Government Cannot Overcome The Due Process Violation Here**

12         The government claims Left cites "orthogonal" caselaw and then

13  mischaracterizes his argument as seeking to prohibit the application of "criminal

14  law to a novel factual circumstance[.]" (Opp. at 23.) Not so.

15         A criminal law is vague if it fails to provide "fair notice of the conduct

16  proscribed." (*U.S. v. Hogue*, 752 F.2d 1503, 1504 (9th Cir. 1985).) "There are three

17  related manifestations of the fair warning requirement." (*U.S. v. Lanier*, 520 U.S.

18  259, 266 (1997).) "First, an act cannot be so vague that 'men of common

19  intelligence must necessarily guess at its meaning and differ as to its application.'"

20  (*U.S. v. Hockings*, 129 F.3d 1069, 1072 (9th Cir. 1997) (citation omitted).)

21  "Second, the rule of lenity must be applied to restrict criminal statutes to conduct

22  clearly covered by those statutes." (*Id.*) "Third, a court may interpret the statute to

23  provide the 'requisite level' of clarity, but any such interpretation must not be so

24  'novel' as to include conduct that 'neither the statute or any prior judicial decision

25  has fairly disclosed to be within its scope.'" (*Id.*) Although prior precedent is not

26  required to apply a criminal statute, it can inform a fair notice challenge. (*Saathoff*,

27  708 F. Supp. 2d at 1034 ("The core factual scenario…in this indictment concerns

28  conduct that is not even close to the facts of any other reported judicial decision.").)

16

*REPLY BRIEF*

1    Left argues that neither the laws underlying his charges nor related precedent

2    provide fair notice. The government cites one criminal case and one civil case, but

3    they are inapposite as articulated earlier in this brief. (*Supra* § I(C).) The only

4    similar case, *Constantinescu*, was dismissed. (2024 WL 1221579, at *6.) If

5    securities law professors believed the government's theory here was "unresolved,"

6    surely persons of ordinary intelligence did not have notice either. (Mot. at 18.)

7    **V.    The False Statement Charge Is Fatally Flawed**

8        **A.    Duplicity**

9        The government argues Count 19 is not duplicitous, but its arguments fail.

10        First, the government claims "none of defendant's citations pertains to

11   § 1001" (Opp. at 23), but Left cited *Dedman* and *Fry*, which address Section 1001.

12   (Mot. at 20.) As the government's citation to perjury cases also demonstrates, the

13   Ninth Circuit applies perjury caselaw to false statement charges because they are

14   "analogous." (*U.S. v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003) (per curiam).)

15        Second, the government cites two inapposite cases involving multiple false

16   statements in a *single document*. But "a false statement and production of a false

17   document are two separate offenses under 18 U.S.C. § 1001." (*U.S. v. Dilworth*,

18   No. 10-cr-730, 2011 WL 6179278, at *3 (D.N.J. Dec. 12, 2011).) The unit of

19   prosecution for § 1001(a)(3) is a document. However, Count 19 here is duplicitous

20   because it bases a *single* § 1001(a)(2) charge on *two interview* statements.

21       **B.    Fundamental Ambiguity**

22       Citing a case holding "unlawful possession of a weapon" was "not

23   fundamentally ambiguous" for having "two plausible meanings" (*U.S. v. Camper*,

24   384 F.3d 1073, 1077–78 (9th Cir. 2004)), the government argues "some ambiguity"

25   does not necessitate dismissal. (Opp. at 24.) But the questions here are

26   fundamentally ambiguous and warrant dismissal.

27       The government does not respond to the grammatical issues in the first

28   question regarding temporality (i.e., "**Do** you **share**") and use of the singular form

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

17

(i.e., "report" vs. "report**s**"), which were sufficiently ambiguous for reversal in *Cook* and *Jiang*. (Mot. at 20–21.) Instead of addressing the flipped grammatical structure of the question which contradicts the Indictment's language, the government merely responds that it would not "make sense to discuss his publication of reports to hedge funds, since he issued his reports publicly through his website and Twitter account." (Opp. at 25.) But this proves Left's point—the question does not "make sense" as asked. The government also does not respond to its failure to allege a false answer. (Mot. at 21:17–26.) Finally, the government's attempt to add "context" to the question from outside the Indictment is not only improper, but it also speaks volumes to the indefensibility of the question.[10]

Next, the government argues "when" in the second question and "never" in Left's answer "confirms his understanding that it applied to past conduct[.]" (Opp. at 25–26.) But "when" means "at or during which time." (*When*, Merriam-Webster Dictionary (2025).) Thus, the temporal scope "when" covers depends on other words in the question. The government ignores that "check," "are looking at," and "is" constraint "when" to the present or future. Left's response does not clarify the ambiguity because "never" means "at no time" or "not under any condition," which can refer to the past, present, or future. (*Never*, Merriam-Webster Dictionary (2025).) As such, Left's answer could mean he will "never" compensate a hedge fund for their expertise. Finally, rather than address its addition of "received" before and "from" after "compensation" in the Indictment's language, the government again improperly adds "context" to the question's "premise" because it cannot overcome the fundamental ambiguity warranting dismissal of Count 19.[11]

---

[10] Defendant objects to this extrinsic evidence, but should the Court consider it, Left requests the Court equally consider that Left's answer to the first question ends: "Other than that, yeah, **you have to, sometimes you share your work**."

[11] Defendant again objects to this extrinsic evidence, but should the Court consider it, Left requests the Court equally consider that the agent later clarified: "But so far as other hedge funds, their--**you--you are not paying them?**"

18

*REPLY BRIEF*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

## <u>CONCLUSION</u>

The government's Opposition cannot compensate for the Indictment's missing essential elements, and therefore this case should be dismissed.

Dated: March 10, 2025

Respectfully submitted,

SPERTUS, LANDES & JOSEPHS, LLP

By: _____

James W. Spertus
Lindsey Hay
Mario Hoang Nguyen

*Attorneys for Defendant Andrew Left*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

19

*REPLY BRIEF*

1

## **<u>Certificate of Compliance</u>**

2          The undersigned, counsel for Defendant Andrew Left, certifies this

3 memorandum of points and authorities contains 6,120 words, which complies with

4 the word limit of L.R. 11-6.1.

5          Dated: March 10, 2025

6

7                                                    James W. Spertus

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*REPLY BRIEF*