**SPERTUS, LANDES & JOSEPHS, LLP**
JAMES W. SPERTUS (Cal Bar No. 159825)
jspertus@spertuslaw.com
LINDSEY HAY (Cal Bar No. 311463)
lhay@spertuslaw.com
MARIO HOANG NGUYEN (Cal Bar No. 355543)
mnguyen@spertuslaw.com
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDREW LEFT,<br><br>Defendant. | Case No. 2:24-cr-00456-TJH<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Date: May 5, 2025<br>Time: 10:00 a.m.<br>Ctrm: 9C<br>Judge: Hon. Terry J. Hatter, Jr. |

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

## INTRODUCTION

On March 21, 2025, the U.S. Supreme Court decided *Thompson v. United States* (No. 23-1095, 604 U.S —, 2025 WL 876266 (U.S. Mar. 21, 2025)), attached here as **Exhibit A**. This binding authority has direct applicability to Count 19 of the Indictment, but was decided after the conclusion of briefing on Defendant's Motion to Dismiss. Accordingly, Defendant submits this Notice of Supplemental Authority for the Court's consideration in support of his Motion to Dismiss (ECF No. 34).

## DISCUSSION

The government's false statement charge in Count 19 is now even less tenable under the Supreme Court's recent unanimous decision in *Thompson*, which clarified that statutes criminalizing false statements are not implicated by *misleading* statements. In *Thompson*, the defendant borrowed three sums of money from a bank: (1) $110,000 in 2011 for an equity contribution to a law firm; (2) $20,000 in 2013; and (3) $89,000 in 2014. (2025 WL 876266, at *2.) After the Federal Deposit Insurance Corporation ("FDIC") later took control of the bank when it failed, the loan servicer sent Thompson an invoice with an outstanding balance of $269,120.58, which consisted of the $219,000 Thompson borrowed plus interest. (*Id.*) Thompson called the loan servicer to dispute the balance and told the customer service agent that he had "no idea where the 269 number comes from" and "I borrowed the money, I owe the money—but I borrowed . . . I think it was $110,000." (*Id.*) A few days later two FDIC contractors called Thompson, and during that call Thompson mentioned borrowing $110,000 for "home improvement." (*Id.*) Thompson was charged and convicted of two false statement counts—one for each phone call—under 18 U.S.C. § 1014. (*Id.* at *2–3.)

However, the Supreme Court vacated Thompson's convictions and remanded the case because "a statute that applies to 'any false statement' does not cover all misleading statements, because the statement must still be false." (*Id.* at *4.) The Court noted "the statute uses the word 'false'" but "[i]t does not use 'misleading,'"

1

1 therefore, "the only relevant question according to the text of the statute is whether
2 the statement is 'false'" and "a statement that is misleading but true is by definition
3 not a 'false statement.'" (*Id.*) The Court concluded that even "[i]f a material
4 omission renders a statement misleading, § 1014 *still does not cover that statement*
5 unless it can be characterized as 'false' and not 'true'" in and of itself. (*Id.* at *5
6 (emphasis added).)

7     *Thompson* is directly applicable to Count 19 here, which charges Left with a
8 false statement under 18 U.S.C. § 1001(a)(2), the text of which closely tracks the
9 language of 18 U.S.C. § 1014, the charged statute in *Thompson*. Section 1014, in
10 relevant part, prohibits "knowingly mak[ing] any false statement or report" for the
11 purpose of influencing the FDIC's action upon any loan. (18 U.S.C. § 1014.)
12 Section 1001(a)(2) in near identical fashion prohibits "knowingly and willfully . . .
13 mak[ing] any materially false, fictitious, or fraudulent statement or representation"
14 within the jurisdiction of the executive, legislative, or judicial branch. (18 U.S.C.
15 § 1001(a)(2).) As such, the text of Section 1001(a)(2) tracks the language of Section
16 1014, and, if anything, Section 1001(a)(2) is more exacting because it requires the
17 false statement be "material" and made "willfully." But most importantly, Section
18 1001(a)(2) "does not use 'misleading,'" and therefore, *Thompson* is directly
19 applicable. (2025 WL 876266, at *4.)

20     In addition to the myriad issues raised in Left's Motion to Dismiss, the
21 government's false statement charge cannot survive any credible reading of
22 *Thompson*.

23     The postal inspector's first question was: "When you check with other hedge
24 funds that specialize in the industry that you are looking at, is there compensation
25 between the two of you?" (Indictment, ECF No. 1 ¶ 104(a).) The government
26 alleges Left responded, "[n]ever . . . never, never, never." (*Id.*) As explained in
27 Left's Motion to Dismiss, the grammatical structure of the question is phrased such
28 that it asks if Left compensates hedge funds in return for their expertise. (Mot., ECF

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1  No. 34-1 at 22.) The Indictment does not allege that Left's statement was false
2  because Left paid compensation *to* a hedge fund. Instead, it alleges the statement
3  was false because Left "received compensation from" a hedge fund. (*Id.*) Because
4  Left "never" compensated a hedge fund when checking with them about their area
5  of expertise in a specialized industry, Left's statement was *true*. In its Opposition to
6  Left's Motion to Dismiss, the government argued for an interpretation of the postal
7  inspector's question that was inconsistent with the question's plain meaning.
8  Specifically, the government argued that the question was about whether Left
9  *received* compensation from a hedge fund. Even if the government is permitted to
10 rewrite the question (it is not), Left's answer then becomes, at most, misleading and
11 "a statement that is misleading but true is by definition not a 'false statement'"
12 under *Thompson.* (2025 WL 876266, at *4.)
13       The postal inspector's second question was: "Do you share your report
14 before it goes public with [hedge funds]?" (Indictment ¶ 104(b).) The government
15 alleges that Left responded, "No, no, no, the only thing I might do . . . I might
16 double check a spreadsheet . . . . [I]t's always done to make sure it's factually
17 right." (*Id.*) However, Left's answer about sharing a "spreadsheet" was not
18 responsive to the postal inspector's question about sharing a "report," and the
19 government does not allege Left's answer about sharing a "spreadsheet" was false.
20 (*Id.*) Instead, the factual allegation the government makes in the Indictment to claim
21 that Left's answer was a false statement is that Left "routinely shared the *content* of
22 Citron's commentary with hedge fund managers . . . ." (*Id.* (emphasis added).) But
23 this allegation does not establish falsity. The "content of Citron's commentary" is
24 not the same as a "report," and the Indictment does not allege that they are the
25 same. A "spreadsheet" does not contain the "content of Citron's commentary"
26 either, and the Indictment fails to allege that it does. Nor is a "spreadsheet" the
27 same as an entire "report," and the Indictment does not allege that it is either. Thus,
28 neither the postal inspector's question, Left's answer, nor the allegation supporting

3

falsity in the Indictment line up sufficiently to support the false statement count. At most, the government can argue that Left's answer about a "spreadsheet" *misled* the postal inspector about the sharing of his "report," but even if it did, Left's answer about the "spreadsheet" was *true* and cannot support a false statement charge under *Thompson* because "a statement that is misleading but true is by definition not a 'false statement.'" (2025 WL 876266, at *4.)

## CONCLUSION

The Supreme Court's directive in *Thompson* is directly applicable to Count 19 here and precludes the government from charging Left for a false statement on the basis of a *misleading* statement. Accordingly, the Court should grant Left's Motion and dismiss the charges against him.

Dated: March 25, 2025

Respectfully submitted,

SPERTUS, LANDES & JOSEPHS, LLP

By: /s/ James Spertus
James W. Spertus
Lindsey Hay
Mario Hoang Nguyen

*Attorneys for Defendant Andrew Left*