1  BILAL A. ESSAYLI
   United States Attorney
2  CHRISTINA SHAY
   Assistant United States Attorney
3  Chief, Criminal Division
   ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
4  Assistant United States Attorney
   Deputy Chief, Criminal Division
5  HAOXIAOHAN CAI (Cal. Bar No. 331131)
   Assistant United States Attorney
6  Major Frauds Section
   LAUREN ARCHER
7  MATTHEW REILLY
   Trial Attorneys
8  Criminal Division, Fraud Section
        1200/1100 United States Courthouse
9       312 North Spring Street
        Los Angeles, California 90012
10      Telephone: (213) 894-1259/0762
        E-mail:     alexander.schwab@usdoj.gov
11                  haoxiaohan.cai@usdoj.gov

12 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
13
                    UNITED STATES DISTRICT COURT
14
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
15
   UNITED STATES OF AMERICA,          No. 2:24-cr-00456-TJH
16
            Plaintiff,                GOVERNMENT'S OPPOSITION TO
17                                    DEFENDANT'S MOTION TO COMPEL
                 v.                   PRODUCTION OF DISCOVERY;
18                                    MEMORANDUM OF POINTS AND
   ANDREW LEFT,                       AUTHORITIES
19
            Defendant.               Hearing Date: August 18, 2025
20                                   Hearing Time: 10:00 a.m.
                                     Location: Courtroom 9C
21

22
        The United States of America, by and through its counsel of
23
   record, the United States Attorney for the Central District of
24
   California, the Acting Chief of the Fraud Section of the Criminal
25
   Division of the U.S. Department of Justice, Assistant United States
26
   Attorneys Alexander B. Schwab and Haoxiaohan Cai and Trial Attorneys
27

28

Lauren Archer and Matthew Reilly, hereby file its opposition to defendant Andrew Left's motion to compel discovery (ECF No. 69).

This opposition is based on the attached memorandum of points and authorities, the files and records in this case, the exhibits hereto, and such further evidence and argument as the Court may permit.

Dated: July 28, 2025                    Respectfully submitted,

                                        BILAL A. ESSAYLI
                                        United States Attorney

                                        LORINDA I. LARYEA
                                        Acting Chief, Fraud Section
                                        Criminal Division of DOJ

                                              /s/
                                        _____
                                        LAUREN ARCHER
                                        MATTHEW REILLY
                                        ALEXANDER B. SCHWAB
                                        HAOXIAOHAN CAI

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

## **TABLE OF CONTENTS**

I.    INTRODUCTION.............................................................1

II.   BACKGROUND...............................................................3

      A.    The SEC Access Request Process............................3

      B.    The SEC Parallel Investigation Materials.................6

      C.    Defendant's Motion to Compel Discovery from SEC..........8

            1.   *The Speculated SEC Investigations*..................9

            2.   *The Unrelated SEC Investigations*.................10

            3.   *Defendant's Other Requests from the SEC's Files*...12

III.  LEGAL STANDARD..........................................................13

IV.   ARGUMENT................................................................15

V.    CONCLUSION..............................................................18

1

## TABLE OF AUTHORITIES

2

3

***Cases***

4

In re Cronos Group Inc.,
   Exch. Act Rel. No. 96137 (S.E.C. October 24, 2022). . . . . . . 10

5

6

In re General Electric Company,
   Exch. Act. Rel. No. 90620 (S.E.C. Dec. 9, 2020). . . . . . . . . 9

7

In re India Globalization Capital, Inc., Securities Act of 1933
Release No. 10908 (S.E.C. December 21, 2020) . . . . . . . . . . 11

8

9

In re Spruce Power Holding Corp.,
   Exch. Act. Rel. No. 98612 (S.E.C. Sept. 28, 2023). . . . . . . . 11

10

11

Sanchez v. United States,
   50 F.3d 1448 (9th Cir. 1995). . . . . . . . . . . . . . . . . . 13

12

SEC v. Left,
   2:24-cv-6311-SPG (C.D. Cal. 2024). . . . . . . . . . . . . . . . 6

13

14

United States v. Alahmedalabdaloklah,
   94 F.4th 782 (9th Cir. 2024). . . . . . . . . . . . . . . . passim

15

United States v. Bryan,
   868 F.2d 1032 (9th Cir. 1989) . . . . . . . . . . . . . . . . . 14

16

17

United States v. Boustani, No. 18-CR-681, ECF No. 232 (Order Den.
Def. Disc. Mot.)(E.D.N.Y. filed Oct. 3, 2019). . . . . . . . . . 16

18

19

United States v. Cano,
   934 F.3d 1002 (9th Cir. 2019). . . . . . . . . . . . . . . passim

20

United States v. Finnerty,
   411 F. Supp. 2d 428 (S.D.N.Y. 2006). . . . . . . . . . . . . . . 16

21

22

United States v. Kabilafkas, No. 24-cr-270-MRA-1, ECF No. 139 (C.D.
Cal. May 13, 2025). . . . . . . . . . . . . . . . . . . . . passim

23

24

United States v. Stringer,
   535 F.3d 929 (9th Cir. 2008). . . . . . . . . . . . . . . . 6, 14

25

United States v. Tournant
   2023 WL 5001186 (S.D.N.Y. Aug. 4, 2023). . . . . . . . . . . 18-19

26

27

28

United States v. Zuno-Arce,
   44 F.3d 1420 (9th Cir. 1995). . . . . . . . . . . . . . . . . . 15


**Regulations**

SEC Enforcement Manual §5.1.. . . . . . . . . . . . . . . . . . 4-5

SEC Enforcement Manual § 2.3 . . . . . . . . . . . . . . . . . 4

SEC Enforcement Manual § 2.3.4 . . . . . . . . . . . . . . . . 4

SEC Enforcement Manual § 3.2.9 . . . . . . . . . . . . . . . . 4

SEC Enforcement Manual § 3.2.10 . . . . . . . . . . . . . . . . 4

Securities Exchange Act of 1934, 15 U.S.C. § 78x(b). . . . . . . . 5

Securities Exchange Act of 1934, 17 CFR § 240.24c-1(b). . . . . . . 5

SEC Enforcement Manual § 5.6.1 . . . . . . . . . . . . . . . . 5

SEC Enforcement Manual § 5.1 . . . . . . . . . . . . . . . . . 4- 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3    Defendant Andrew Left's motion to compel expansive discovery

4    from the U.S. Securities and Exchange Commission ("SEC") is an

5    premised on a bait and switch.  Defendant focuses extensively on the

6    SEC's civil investigation of and ultimate complaint against defendant

7    in asserting that the prosecution team worked "arm-in-arm" with the

8    SEC.  However, defendant fails to highlight for the Court a number of

9    key facts.  First, the prosecution team has already provided all of

10   the record productions it received from the SEC Los Angeles Regional

11   Office's parallel investigation into defendant (the "SEC Parallel

12   Investigation").[1]  Second, ███████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████[2]  Third, defendant now seeks – but obfuscates from the

15   Court – two impermissible categories of material: records from other,

16   unrelated SEC investigation files ("Unrelated SEC Investigations")

17   and also materials from hypothesized SEC investigations that

18   defendant admits that he does know whether they exist ("Speculated

19   SEC Investigations").  For both of these categories, there is no

20   basis to assert that the prosecution team has access to or knowledge

21   of, which defendant must establish to succeed on his motion.

22

23

24

_____

25    [1] The government is in the process of making a small follow-on

26   production of materials that it received from the SEC Parallel
     Investigation and anticipates making that production in advance of

27   the hearing on defendant's motion to compel.

28    [2] See, infra, Section II.B.

These key facts doom defendant's Motion.  This prosecution team[3]
has no involvement in the Unrelated SEC Investigations or Speculated
SEC Investigations, and utterly no access to the SEC's corresponding
investigative files (to the extent such investigations and files even
exist).  While the SEC has granted an "access request" to the
prosecution team for the Parallel SEC Investigation, the prosecution
team has never submitted, nor has the SEC ever granted, any such
requests for the Unrelated SEC Investigations or the Speculated SEC
Investigations.  Unsurprisingly, the prosecution team therefore has
no ability to review, produce, or exercise any control over any of
those matters.  This is precisely the sort of overbroad discovery
request for records from another agency that the Ninth Circuit
recently foreclosed.  See United States v. Alahmedalabdaloklah, 94
F.4th 782, 845 (9th Cir. 2024) (even when one component of an agency
participated in a criminal investigation, that does not result in the
prosecution team having access to or knowledge of the rest of the
records held by other components of that same agency for purposes of
Brady).

Moreover, the nature of the files sought reflects that
defendant is on a fishing expedition for records that the prosecution
team would not have an obligation to produce, even if they were held
by another component of the Department of Justice (they are not).
See United States v. Cano, 934 F.3d 1002, 1024-25 (9th Cir. 2019)

---

[3] In this case, the prosecution team is the U.S. Attorney's
Office for the Central District of California, the Fraud Section of
the U.S. Department of Justice's Criminal Division, the U.S. Postal
Inspectors' Fraud Section team, and the Federal Bureau of
Investigation's Los Angeles Field Office.

1  (government did not have an obligation to "comb the files" of two

2  components within DOJ who did not participate in the criminal

3  investigation for <u>Brady</u>).  Here, defendant goes even further by

4  seeking SEC files from matters investigated by completely different

5  SEC offices than the office that conducted the SEC Parallel

6  Investigation of defendant.  Tellingly, defendant provides no basis

7  for his assertion there is actual exculpatory evidence in such files.

8      In essence, defendant's theory is that if another component of

9  another agency might have materials that he wants, he is entitled to

10  them even if the prosecution team has no access to, no knowledge of,

11  and no control of the material.  Confusingly, defendant seeks these

12  purportedly expansive records while simultaneously claiming in

13  another motion that the government produced too extensive discovery.

14  Nonetheless, defendant's proposed rule transforms the prosecution

15  team's discovery obligations well beyond any recognized principal to

16  reach into every crevice of an agency even when it did not

17  participate in the criminal investigation.  That is not the law.

18      The prosecution team has produced the records that it has and

19  will produce those that it has access to.  Defendant's motion to

20  compel the production of records from unrelated SEC investigations

21  conducted by wholly uninvolved SEC offices that the prosecution team

22  has absolutely no access to, must be denied.

23  **II.  BACKGROUND**

24      **A.    The SEC Access Request Process**

25      Defendant fundamentally misunderstands an SEC access request

26  letter and attempts to paint a nuanced process with an overly broad

27  brush.  As a baseline matter, materials gathered in SEC

28                                      3

investigations are nonpublic and confidential.[4]  The SEC Division of Enforcement, which conducts the Commission's nonpublic investigations of civil violations of the federal securities laws, is spread among ten regional offices[5] and the Home Office in Washington, DC. Investigations within the SEC Division of Enforcement are formally segregated by matter numbers (designating the investigating office and unique number to the specific matter) and there is a formal process for opening an investigation, which is limited to specific facts, conduct, or individuals.  See SEC Enforcement Manual § 2.3. When there is a formal order of investigation, the SEC itself issues an order that is limited to specifically designated staff members to act as officers of the Commission for purposes of that specific investigation.  Id. at § 2.3.4.  The files for different investigations are segregated by matter number, housed separately, see id. at § 3.2.9 (Maintaining Investigation Files) and § 3.2.10 (Document Control), and not accessible across the entire SEC or even within the Division of Enforcement.  Statutory authority and SEC rules and policies govern when and how the SEC can share information with criminal investigative authorities.[6]  If a criminal agency, such

---

[4] "All information obtained or generated by SEC staff during investigations or examinations  should be presumed confidential and nonpublic unless disclosure has been specifically authorized."  SEC Enforcement Manual §5.1 (available at https://www.sec.gov/divisions/enforce/enforcementmanual.pdf).

[5] https://www.sec.gov/about/regional-offices (last visited July 24, 2025).

[6] Section 24(a) of the Securities Exchange Act of 1934 states that "[i]t shall be unlawful for any member, officer, or employee of the Commission to disclose to any person other than a member,

*(footnote cont'd on next page)*

4

as DOJ, has a need for information, they may seek from the SEC an
"access request" letter into a specific matter that the SEC Division
of Enforcement is investigating.[7]  There are three important
limitations on this process: (1) the SEC has discretion whether or
not to grant the access request; (2) if access is granted, the SEC
staff retains discretion as to what materials from within a specific
investigation file it will share pursuant to an access request
grant;[8] and, most importantly for the present motion, (3) an access

officer, or employee of the Commission, . . . any information
contained in any [document] obtained by the Commission . . . in
circumstances where the Commission has determined pursuant to such
rules to accord confidential treatment to such information."  15
U.S.C. § 78x(b).  Under the statute, a process was created by
regulation to permit providing access to certain records to, among
other entities, an agency of the federal government.  17 CFR §
240.24c-1(b).

    [7] "The Commission may, in its discretion and upon a showing that
such information is needed, provide nonpublic information in its
possession to [another federal government agency] if the person
receiving such nonpublic information provides such assurances of
confidentiality as the Commission deems appropriate."  17 CFR §
240.24c-1(b)(1) (emphasis added).

    [8] The regulation does not undermine the "[t]he Commission's
authority or discretion to provide or refuse to provide access to, or
copies of, nonpublic information in its possession in accordance with
such other authority or discretion as the Commission possesses by
statute, rule or regulation[.]"  Id. (c)(1).  Even when an access
request in a particular matter is granted the SEC staff retains
discretion as to what materials are in fact shared with criminal
authorities.  See SEC Enforcement Manual § 5.6.1 ("When the access
request has been approved, staff may share documents from the
investigative file."); § 5.1 ("work product and other privileged
information is rarely disclosed, even when third-parties are granted
access to the other materials in nonpublic files" and limiting
disclosure of materials obtained from other agencies).  And, of
course, the ability to provide materials to criminal authorities is
limited to those matters for which there is a valid access request.
See id. ("All information obtained or generated by SEC staff during
                                        *(footnote cont'd on next page)*

5

request grant is strictly limited to the specific matter number
referenced in the criminal agency's access request letter (*i.e.*
access granted in one matter does not open up the entirety of the
SEC's files to another investigative agency).[9]  In sum, an access
request is a threshold step to a criminal agency receiving certain
SEC files, but it does not provide the other agency with control of,
or legal or practical access to, the entire SEC files for the
specific matter – and it certainly does not provide control, access,
or knowledge of all of the SEC's other case files.

**B.    The SEC Parallel Investigation Materials**

Defendant is correct that there are factual overlaps between the
criminal securities fraud charges for which he was indicted in this
case and the SEC's civil complaint.  Beyond that, defendant misses
the mark on numerous fronts.

The SEC conducted a separate, parallel investigation from DOJ.
*See United States v. Stringer*, 535 F.3d 929, 936–39 (9th Cir. 2008)
(recognizing separate parallel criminal and SEC civil investigations
as appropriate).  The SEC Parallel Investigation resulted in the
filing of a complaint against defendant (with a different, more
expansive set of conduct and stock tickers than charged in the
government's criminal case). See SEC v. Left, 2:24-cv-6311-SPG (C.D.

---

investigations or examinations should be presumed confidential and
nonpublic unless disclosure has been specifically authorized.").

[9] See Ex. 3 ██████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Cal. 2024).  The SEC also filed settled charges against other related

individuals and entities, including Citron Capital ███████████

███████████████ [10] The prosecution team submitted an access request

to the SEC Parallel Investigation for information in the SEC Parallel

Investigation file.[11]  In connection with that request, the staff

assigned to the SEC Parallel Investigation in the SEC's Los Angeles

Regional Office provided the prosecution team certain materials

obtained during their investigation.

Defendant has been provided with substantial material from the

SEC Parallel Investigation file.  First, defendant was provided with

all productions of records that the SEC Parallel Investigation team

provided to the prosecution team pursuant to the access request.

Next, the prosecution team agreed to request from the SEC and provide

defendant with additional records not previously provided to the

[10] ████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████ See Ex. 3.

[11] ████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

prosecution team.[12]  The irony is that defendant is making this overly
broad request for records, seemingly envisioning a vast array of
records to be produced, while he simultaneously complains in another
motion that the prosecution team has produced too much discovery and
it has purportedly prevented him from discerning the nature of the
charges against him.  See ECF No. 62 at 9.

██████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████

C.   **Defendant's Motion to Compel Discovery from SEC**

Defendant's present motion concerns his requests for discovery
from numerous other SEC investigation files (the Unrelated SEC
Investigations) that the prosecution team has never had any access
to, never submitted an access ████████████████████████████████
████████████████████████████████████████████

[12] This included materials ████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████  See Ex. 3.

involvement with these investigations. Based on the public filings,
the Unrelated SEC Investigations were not conducted by the SEC's Los
Angeles Regional Office.  In sum, the prosecution team does not have
any form of access to, let alone possession, custody, or control over
any materials from these other matters.

Defendant requests discovery from at least six SEC investigation
files related to the following tickers: Cronos Group ("CRON"); XL
Fleet ("XL"); General Electric ("GE"); Namaste Technologies
("NXTTF"); India Globalization Capital Inc. ("IGC"); and Beyond Meat,
Inc. ("BYND").

### 1. *The Speculated SEC Investigations*

For GE,[13] NXTTF, and BYND, defendant asserts no knowledge of
either an investigation into those entities or any public SEC action

---

[13] Defendant does not reference any investigation into GE in his
motion, but appears to ignore the SEC's no-admit, no-deny settlement
with GE for non-scienter disclosure fraud on December 9, 2020.  In re
General Electric Company, Exch. Act. Rel. No. 90620 (S.E.C. Dec. 9,
2020).  This investigation, which was conducted by the SEC's Boston
Regional Office (see https://www.sec.gov/newsroom/press-
releases/2020-312) resulted in a $200 million fine for GE for failing
to disclose failures in its power and insurance businesses.  This
omission may be because defendant's GE report (in the long direction)
focused on discrediting another short seller who had alleged GE was
engaging in accounting fraud and asserting that this was not the
case.  See Ex. 4 at 1 (Citron GE Long Report).  In the positive
report and accompanying tweet, defendant misled the market by stating
that "Citron took the opportunity to buy stock as well" without
disclosing that he had already placed limit orders to sell his
position if the price rose by approximately 30 cents from his
purchase price and intended to sell all of his shares shortly after
publishing the report.  (Indictment ¶¶ 86 -89); Ex. 4.  Accordingly,
it is nonsensical that any potential records gathered by the Boston
Regional Office – in an investigation that demonstrated defendant's
commentary was wrong — would be evidence that he is entitled to under
a Brady theory.  And, if this is the GE investigation defendant has
in mind, the prosecution team clearly has no access to or knowledge
*(footnote cont'd on next page)*

1   against those entities.  Defendant even admits his request is based

2   on pure speculation: "The multiple companies ... are most likely

3   under investigation by the SEC[.]"  Mot. at 4 (emphasis added).

4   Defendant's lack of any basis to believe the SEC even has files

5   involving investigations into these entities reveals his motion for

6   the fishing expedition that it is.  ████████████████████████

7   ████████████████████████████████████████████████████████████

8   ██████████████████████████████████

9                  2.   **The Unrelated SEC Investigations**

10       Defendant's motion to compel discovery from SEC investigation

11  files and civil settlements with CRON, XL, and IGC (the Unrelated SEC

12  Investigations) is also problematic.  As threshold matter, the SEC's

13  settlements with CRON and XL do not reference defendant, Citron, or

14  anything about internet-based stock promoters/activist short sellers,

15  like defendant.  For CRON, the timing of the charged public

16  statements by defendant in the indictment does not even align with

17  the conduct covered in the SEC's matter.  For example, publicly

18  available information indicates that the CRON matter concerns conduct

19  that began more than six months after defendant's manipulative tweet,

20  report, and TV appearance regarding CRON in August 2018.  See In the

21  Matter of Cronos Group Inc., Exch. Act Rel. No. 96137 (S.E.C. October

22  24, 2022) (concerning conduct that began in the first quarter of

23  2019).

24

25

26  of a wholly unrelated SEC Boston Regional Office investigation that
    does not even reference defendant or short sellers.  See Exch. Act.
27  Rel. No. 90620.

28                               10

For XL, defendant's theory of potential exculpatory information makes no sense. Defendant put out a misleading tweet on December 23, 2020: "Citron long $XL tgt $60" and, within one trading day, defendant sold all of the XL shares he had just purchased at prices substantially below $60. (Indictment ¶¶ 67-70.) The SEC later settled with XL for non-scienter fraud violations of the securities laws for misleading statements concerning its sales pipeline and conversion rate. See In the Matter of Spruce Power Holding Corp., Exch. Act. Rel. No. 98612 (S.E.C. Sept. 28, 2023). In other words, while defendant's 2020 long tweet on XL predicted positive future news, the SEC's settlement with XL was a negative revelation about the company. It, therefore, does not follow that the SEC's files in the XL matter would indicate that defendant's tweet was correct, part of a truly held opinion when issued, or that he did not withhold critical information about his own trading intentions when publicly touting the stock. In fact, it appears that these files would only further support that defendant recommended to the public a stock that turned out to have made misleading statements.

With regard to IGC, defendant similarly fails to provide any basis or indication that the SEC investigation of IGC had anything to do with him. As an initial matter, the SEC's settlement focused on a March 2018 press release and defendant's public statement about IGC occurred in October 2018. Compare In the Matter of India Globalization Capital, Inc., Securities Act of 1933 Release No. 10908 (S.E.C. December 21, 2020) and Indictment ¶ 99. There is no reference to defendant in the SEC's public filings about the IGC case. To the extent defendant believes that the findings of this or

11

any of the SEC's cases are relevant to his defense theory, he has all the relevant information in the SEC's multi-page order addressing the SEC's findings (on a neither admit nor deny basis) concerning the non-scienter fraud charges about the March press release and April-June equity raise. In re IGC, ¶¶ 1, 9-20.

For all of these matters, there is no basis to believe that there is anything material or exculpatory concerning defendant in the SEC's investigation files. Of course, the prosecution team has no insight as it does not have any form of access to (and certainly no control or knowledge of) the case files in these matters conducted by the separate SEC Home Office staff that apparently worked on these matters (as compared to the Los Angeles Regional Office that worked on the SEC Parallel Investigation).

> 3. **_Defendant's Other Requests from the SEC's Files_**

Defendant also requests "any evidence of wash, match, or coordinated trading in any of the stocks at issue in the Indictment" from the SEC. Defendant does not articulate how such information could be Brady or explain how this information is otherwise discoverable given that there are not any allegations of such trading in the Indictment by defendant or others. Despite the prosecution team's request for additional information about this request during the meet-and-confer process, defendant failed to articulate what form of evidence he is seeking, in what SEC investigation files he believes such evidence exists, and how there is any discovery obligation over such information.

Lastly, defendant makes a catch all request for "any other Brady material in the SEC's possession." Seemingly, defendant's request

1   implies that, in his view, not only does the prosecution team have a

2   discovery obligation over materials beyond the SEC Parallel

3   Investigation, but the entirety of the SEC's files.  Such a sweeping

4   obligation and untenable scope does not exist for the government's

5   obligations over files throughout the Department of Justice,[14] but

6   defendant suggests that the prosecution team somehow has access,

7   control, and knowledge of the entirety of another agency's materials.

8   This is simply not the law.

9       As discussed further below, the facts reveal two fundamental

10  flaws with defendant's motion to compel: (1) he claims "there is

11  significant exculpatory evidence" in the SEC's files, but reveals

12  that his claim is based on wholesale speculation; and (2) he ignores

13  that the prosecution team does not have access, control, or knowledge

14  of the SEC's files beyond what has been provided, and suggests an

15  unfounded standard where the prosecution and the entire SEC are co-

16  extensive.

17  **III. LEGAL STANDARD**

18      "Under both Brady and Rule 16, the government 'has no obligation

19  to produce information which it does not possess or of which it is

20  unaware.'" Cano, 934 F.3d at 1023 (quoting Sanchez v. United States,

21  50 F.3d 1448, 1453 (9th Cir. 1995)).  The government's obligations on

22  this front are cabined by the requirement that the materials must be

23

24      [14] Cano, 934 F.3d at 1023 (concluding that that the FBI and DEA's
    files were not required to be searched for Brady despite that those
25  entities were also components of DOJ and that defendant is not
    entitled to require the government to conduct a broad and expansive
26  search for speculative information that is outside of the
    government's possession, custody, and control, if it exists at all).
27

28                                  13

in the government's "possession." Id.  As relevant here,

"[d]ocuments held by another executive branch agency are deemed to be

'in the possession of the government' if the prosecutor has

'knowledge of and access to' the documents." Id. (quoting United

States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989)).  "The

prosecutor will be deemed to have knowledge of and access to anything

in the possession, custody or control of any federal agency

participating in the same investigation of the defendant." Bryan,

868 F.2d at 1036 (emphasis added). The same investigation is not a

parallel one.  See Stringer, 535 F.3d at 936-39 (recognizing separate

parallel investigations between a DOJ criminal investigation and an

SEC civil investigation).[15]  Additionally, even when an agency is part

of the same investigation, the government's discovery obligations do

not extend to entirety of that agency's files, but only to the files

of agency components actually "participating" in the investigation

and those components that the government actually has "access to" the

records of.  United States v. Alahmedalabdaloklah, 94 F.4th 782, 844-

45 (9th Cir. 2024) ("we hold that the government did not have 'access

to' the entirety of DoD merely because it had the ability to send

queries to [one component]").  "As to those agencies that are not

---

[15] There is no serious argument that the government and SEC
engaged in a joint investigation here.  See, infra, fn. 16.  In his
motion defendant devotes three sentences to his argument and does not
grapple with any of the cases or factors necessary to find two entire
investigations by separate civil and criminal agencies joint.  And,
even the sole outlier Central District of California he relies on
acknowledges that the SEC was not part of the prosecution team there.
See United States v. Kabilafkas, No. 24-cr-270-MRA-1, ECF No. 139, at
*15-16 (C.D. Cal. May 13, 2025) (the SEC is "not a part of the
prosecution team in this case[,]" but wrongly finding that the SEC
had acted on the government's behalf).

14

involved in the investigation, the prosecutor need not comb the files of every federal agency which might have documents; rather, the obligation to disclose turns on the extent to which the prosecutor has knowledge of and access to the documents." Id. (quoting United States v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir. 1995)) (internal punctuation omitted).

**IV.  ARGUMENT**

Turning to the "knowledge of and access to" test here, defendant's motion to compel can be summarily denied.  The prosecution team has neither knowledge of nor access to any SEC case files for the Unrelated SEC Investigations or the Speculated SEC Investigations.

Defendant's heavy reliance on Kabilafkas (in fact, the only case cited in the argument section of his brief) is misplaced. 2:24-cr-270-MRA, ECF No. 139 (C.D. Cal. May 13, 2025).  As an initial matter, defendant ignores that in Kabilafkas, the court denied the motion to compel.  Id. at 16.  More importantly,  defendant's argument rests on a false equivalency because Kabilafkas did not raise "exact same issue," as defendant claims.  Whereas defendant seeks files from entirely unrelated SEC Investigations concerning other companies, Kabilafkas's request was a much narrower one, seeking discovery from the prosecution team for SEC files of the SEC's parallel investigation into Kabilafkas himself.  Id. at 14-15.  Kabilafkas does not provide any authority for a fishing expedition into the SEC's files for unrelated or hypothetical investigations that the prosecution team has neither access to nor control over.

Here, instead, the issue is directly comparable to that faced by
the Ninth Circuit in Alahmedalabdaloklah where the court made clear
that defendant's arguments "conflate the [agency] components that
participated in the investigation with the entirety of [the agency]."
94 F.4th at 844.  Worse, in this case, the SEC component for which
the prosecution team has provided extensive files was itself not even
part of the criminal investigation, but engaged in a separate
parallel civil investigation.[16]   Nonetheless, the prosecution team's
extensive provision of the materials provided from the SEC Parallel
Investigation moots the issue.  See, supra, fn. 12.

---

[16] In the SEC Parallel Investigation, the SEC conducted numerous
investigative testimony sessions and interviews that the government
did not participate in and, similarly, the government and its agents
conducted numerous interviews that the SEC did not participate in.
While there were interviews conducted with both the DOJ and SEC
present, criminal law enforcement took the notes and memorialized the
interview (and such reports have already been produced to defendant).
Notably, the SEC took three days of sworn testimony from defendant,
but the government did not participate.  And when the U.S. Postal
Inspectors interviewed defendant, the SEC was not present.
Additionally, the SEC took no part in any grand jury testimony or
presenting the case to the grand jury, and has not accompanied the
government in court proceedings on this case.  The SEC did not
participate in the preparation or execution of the search warrants in
the matter.  The SEC charged additional securities in its complaint
that the government did not include in the indictment, and the SEC
settled three related cases with other parties that did not involve
the government.  While the government and SEC shared certain
documents with one another, neither shared all of the records
collected.  And it is recognized that "[a]lthough the SEC granted the
Government access to certain material, '[t]he mere fact that the
Government may have requested and received documents from [another
agency] in the course of its investigation does not convert the
investigation into a joint one.'" United States v. Boustani, No. 18-
CR-681, ECF No. 232 (Order Den. Def. Disc. Mot.) at 4 (E.D.N.Y. filed
Oct. 3, 2019)(quoting United States v. Finnerty, 411 F. Supp. 2d 428,
433 (S.D.N.Y. 2006)).

16

1    What remains is defendant's argument that the prosecution team

2   has an obligation to search files that it has no access to.  The

3   Ninth Circuit foreclosed such a standard in Alahmedalabdaloklah.

4   There, the defendant asserted that while the government could and did

5   query the "DoD databases to which the U.S. Attorney's Office had

6   access" and had contacted U.S. Central Command (CENTCOM) to get

7   certain information, Brady required additional searches that would

8   require additional approval and "would require a search of all DoD

9   holdings[.]"  94 F.4th at 843-44.  The Ninth Circuit rejected this

10   position and affirmed the district court's denial of the motion to

11   compel holding that one component of a federal agency's participation

12   in an investigation does not transform the entire agency into a

13   participant in the investigation.  Id. at 845 (defendant's

14   "suggestion that DoD, as a whole, was a 'participating agency' cannot

15   be squared with our conclusion in Cano."); see also Cano, 934 F.3d at

16   1024 (holding that the DOJ did not have an obligation to search the

17   files of other DOJ components that did not participate in the

18   investigation).  The Ninth Circuit's decision turned in part, on the

19   fact that the government "had access only to those databases directly

20   related to [the defendant's] prosecution, that DoD did not

21   affirmatively grant the government access to the many databases and

22   sources of information that [the defendant] wanted the government to

23   search[.]"  Id.  at 845.

24    Just as the government in Alahmedalabdaloklah had no access to

25   the other databases and DOD files beyond those related to the

26   defendant's prosecution, the prosecution team has no access to the

27   SEC's files for the Unrelated SEC Investigations or the Speculated

28                                   17

1   SEC Investigations.  There are no access requests in place with those

2   teams, the prosecution team has not interacted with those case teams,

3   and – based on the prosecution team's review of the public settlement

4   documents – those matters do not even concern defendant.

5        Putting aside that the SEC's Los Angeles Regional Office was not

6   a participating agency in the DOJ's criminal investigation,

7   Alahmedalabdaloklah's teaching is clear: just as access to certain

8   DOD databases did not transform the rest of the DOD into a

9   participating agency, the SEC Parallel Investigation does not create

10  knowledge of and access to unrelated investigations conducted by

11  other SEC offices and staff members.  And it certainly does not

12  create knowledge or access to potential non-public SEC investigations

13  that defendant only speculates exist.  Defendant's proposed rule –

14  whereby an access request to one SEC investigation renders the entire

15  SEC within the prosecution team's knowledge and access – would sweep

16  broader than the government's obligations over DOJ's own records,

17  which are limited to those agencies or offices that participate in

18  the investigation.  See Cano, 934 F.3d at 1024-25 (finding the

19  government did not have an obligation to "comb the files" of the FBI

20  and DEA (two components within DOJ) for Brady because it did not have

21  access to those files).

22  **V.    CONCLUSION**

23       The district court in United States v. Tournant, in rejecting a

24  claim that the government and SEC conducted a joint investigation,

25  observed that "courts have treated with skepticism broad requests for

26  orders requiring the government to search the entire case file of

27  another agency for Brady materials," and disapproved particularly of

28                                    18

defense's "exceedingly broad request——asking the court to compel the government to search all files of the SEC for any potentially exculpatory evidence pertaining to [defendant]." 2023 WL 5001186, at **6-7 (S.D.N.Y. Aug. 4, 2023).  As the Ninth Circuit has explicitly recognized: "non-participating agencies may have valid concerns over revealing sensitive information in cases wholly unrelated to the agencies' own area of expertise, and the agencies may be reluctant to cooperate in a particular investigation if it means opening their files in other investigations." Alahmedalabdaloklah, 94 F.4th at 845 (quoting Cano, 934 F.3d at 1025).  These policies considerations only further bolster the need to deny defendant's attempted fishing expedition.

Defendant's motion to compel, which essentially asks the prosecution team to "search all files of the SEC for any potentially exculpatory evidence[,]" is beyond overly broad and "is simply not supported by current law".  Tournant at *6-7 (collecting cases). Here, as in Tournant, defendant has "not cite[d] any case in which a court has granted a such a sweeping, untailored Brady request, compliance with which would be highly onerous for the government, and which would involve searching databases, reviewing terabytes of documents, and parsing through attorney work product."  Id. at *7 (internal punctuation omitted).  Absent a legal basis for these requests, defendant's motion to compel is unsupported by law and does not allow for the extraordinary remedy he seeks.

Accordingly, the Court should deny defendant's motion to compel in its entirety.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel for the United States, certifies this memorandum of points and authorities contains 6,841 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: July 28, 2025

                            /s/
                          MATTHEW REILLY
                          Trial Attorney