TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
BENEDETTO L. BALDING (Cal. Bar No. 244508)
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorneys
LORINDA I. LARYEA
Chief, Fraud Section
MATTHEW REILLY
Acting Assistant Chief
Criminal Division, Fraud Section
     1200/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2274
     E-mail:  benedetto.balding@usdoj.gov
              andrew.roach@usdoj.gov
              matthew.reilly2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-cr-00456-VAP |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE CERTAIN DEFENSE UNNOTICED EXPERT EVIDENCE AND EXHIBITS 2609, 2610, AND 2617 PURSUANT TO FEDERAL RULES OF EVIDENCE 401, 402, 403, AND 702 |
| v. | |
| ANDREW LEFT, | |
| Defendant. | Trial Date: May 11, 2026 |

The United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California, the Chief of the Fraud Section of the Criminal Division of the U.S. Department of Justice, Assistant United States Attorneys Benedetto L. Balding, and Andrew M. Roach and Acting Assistant Chief Matthew Reilly, hereby files its Motion in Limine to

Exclude Unnoticed Expert Evidence and Exhibits 2609, 2610, and 2617 Pursuant to Federal Rules of Evidence 401, 402, 403, and 702.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, the exhibits to this and such further evidence and argument as the Court may permit.

Dated: May 13, 2026    Respectfully submitted,

            TODD BLANCHE
            Acting Attorney General

            BILAL A. ESSAYLI
            First Assistant
            United States Attorney

            LORINDA I. LARYEA
            Chief, Fraud Section
            Criminal Division

             /s/
            BENEDETTO L. BALDING
            ANDREW M. ROACH
            MATTHEW REILLY

            Attorneys for Plaintiff
            UNITED STATES OF AMERICA

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   INTRODUCTION

Defendant Andrew Left did not notice expert testimony about hypothetical, nonexistent investors who followed his recommendations with a $1,000 bet on every security and held each one for the same arbitrary timeframe.  According to defendant's charts, the hypothetical investor would invest and hold for three years (<u>see</u> Ex. 2610) or approximately six years (<u>see</u> Ex. 2609) straight.  Worse, this fake investor is presumed to have held the long and short positions longer than defendant did, and even well past defendant's recommended target prices, rendering the charts irrelevant and confusing.  These charts violate numerous evidentiary principles and are irrelevant, prejudicial, and improper, unnoticed expert evidence that should be excluded from trial.

Additionally, defendant proposes a statistical analysis of 674 tickers, utilizing specialized and technical trading definitions such "rapid exit," and then establishing a "sentiment-price alignment" analysis and methodology to provide statistical results.  <u>See</u> DX 2617 at 14.  Defendant proposes this chart and analysis may be admitted through a lay summary witness.  But this is expert testimony about which the defendant did not give the required notice and discovery under Rule 16(b)(C).  The government therefore did not have the opportunity to evaluate it before trial, obtain a rebuttal expert to respond to it, or challenge it through the Rule 702 and <u>Daubert</u> process.[1]  This is improper and the evidence should be excluded.

---

[1] The government hereby incorporates the relevant legal standards from the Court's prior orders. (<u>See</u> ECF 234 at 2-3; ECF 348 at 2-3).

**II.    Proposed Exhibits 2609 and 2610 Must be Excluded**

What defendant intends to do with Exhibits 2609 and 2610 is extraordinary.  He seeks to have a lay summary witness testify about a hypothetical investor who invested $1,000 in each security defendant recommended and then show the returns over a three-year period or through the date of the indictment.  It is undisputed that no such investor exists, there is no evidence that any investor actually did this, and there is no evidence that defendant ever recommended retail investors hold these positions as long as this chart suggests.  This purely hypothetical exercise is irrelevant, prejudicial, confusing, and prohibited by Rule 702.  If the government would not be permitted to offer a lay witness to testify about a non-existent hypothetical investor and show how much he would have lost trading opposite defendant's positions, defendant cannot use such hypothetical testimony to make the counterpoint.  Whether or not some version of such testimony might have been permitted had defendant noticed an expert and the government had been able to challenge that notice, a lay witness certainly cannot engage in such a hypothetical exercise.

It is not a defense to fraud that a defendant hoped or wanted everything to work out for his victims in the end.  See United States v. Calderon, 944 F.3d 72, 90 (2d Cir. 2019) ("[T]he fact that the defendant believes (rightly or wrongly) that he will 'ultimately' be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct.").  And it is undisputed that actual loss is not an element of the securities statutes at issue here, as the Court just instructed the jury.  See ECF 355, Court's Preliminary

2

Instruction No. 13 ("It is not necessary that the defendant made a profit or that anyone actually suffered a loss").  Guided by this principle, courts have excluded such evidence.

For example, in United States v. Hickey, the Ninth Circuit affirmed the exclusion of expert testimony that, but for government intervention, the investments would have been profitable.  580 F.3d 922, 931 (9th Cir. 2009).  The panel distinguished good faith evidence from what defendant is attempting to do here:

> Although [the defendant] is entitled to advance the claim that he did not intend to defraud the victims, his argument misunderstands the relevant intent — while an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all. . . .  In other words, even if [the defendant] genuinely believed his investment scheme would be profitable and would result in gains for his investors, he would still be guilty of securities fraud . . . if he knowingly lied to investors about the risks associated with his plan.

Id. at 930-31 (citing United States v. Benny, 786 F.2d 1410, 1417 (9th Cir. 1986) (cleaned up).  Such evidence has also been excluded in a college sports bribery case finding that proof "[t]hat the [victims] might have ultimately benefitted monetarily from having top tier recruits would not have changed whether Defendants were guilty of wire fraud, and the evidence might have clouded the issue for the jury."  United States v. Gatto, 986 F.3d 104, 117-18 (2d Cir. 2021) (explaining that "[t]he law is clear" regarding such evidence).

This is precisely what defendant seeks to do here.  The charts at Exs. 2609 and 2610 invite the jury to believe that defendant did not have the requisite intent because a hypothetical investor would have purportedly made money by following defendant's recommendations

3

far longer than even he ever suggested.  The testimony does not relate to defendant's good faith, but turns the focus on the hypothetical investors to argue defendant did not intend for them to lose them money.  Hickey makes clear that this is not allowed.  580 F.3d at 930-31.  The Court has allowed defendant to introduce evidence of ensuing price movements of the charged stocks to show defendant's intent (see ECF 328 at 6), but that does not mean he can take those price movements and improperly create a non-existent trader to end-run around the rules of evidence.

Additionally, these charts are irrelevant and confusing. Neither the defendant nor any identified investor held any of the positions depicted for that length, so it has no bearing on any fact at issue.  The charts also incorrectly portray defendant's recommendations.  For a number of those stocks, the prices reached their target price before the time periods used in Exs. 2609 and 2610, compare ECF No. 296-1 (attached hereto as Ex. A), and it would be confusing and incorrect for the jury to be told to consider defendant's recommendations for time periods *post-dating* the outside date of defendant's recommendation.  Indeed, there is nothing to suggest that defendant ever recommended to investors that they hold these securities as long as the chart suggests, as long as four or six years after the date of his recommendation.  As a simple example, defendant's May 2019 BYND tweet had a target price of $65, which it eventually hit 2.5 years later in January 2022.  There is no basis, even under the logic of these exhibits, to suggest defendant's recommendation carries on to May 2022 or July 2024 well after his recommendation expired.  This raises acute relevancy and confusion concerns because there is nothing at issue in this trial about stock

4

prices that *post-date* even defendant's own view of when a stock reached defendant's publicly stated goal.  <u>See</u> Ex. A.  Finally, the chart is severely misleading because it does not include the significant cost of shorting a stock over a long-term basis.  Failing to include this borrow cost creates a misleading picture.  Given the absence of probative value and extreme confusion from such evidence, these exhibits should be excluded on these bases as well.

**III. Proposed Exhibit 2617 is Quintessential Expert Testimony**

In Exhibit 2617, defendant offers unnoticed statistical methodology and analysis that he intends to admit through a lay summary witness.  To evaluate the impropriety of this exhibit, the Court only need look at the last four pages of Exhibit 2617.  Buried in the back of this exhibit is everything the Court needs to see to know that this exhibit cannot be admitted through a lay witness.

To start, Exhibit 2617 is a 14-page analysis that relies on four sets of records, has seven definitions necessary to understand it (including two specialized definitions for the statistical analysis and something called "sentiment price-alignment"), concerns analysis of 674 tickers over 2,981 trading events,[2] includes multiple slides splicing the data to conform with the various customized definitions used in the analysis,[3] features a comparative statistical chart of the features of charged v. uncharged tickers, offers numerous slides describing the "sentiment-price alignment analysis" and applying the "sentiment-price alignment methodology,"[4] and concludes with a

---

[2] The government has not yet been provided with what securities were included in each defined category of securities in DX 2617.  As of the date of filing, defendant was still working to provide it.

[3] Exhibit 2617 at 7-10.

[4] Exhibit 2617 at 10-14.

10-bar, multi-metric bar chart of "sentiment-price alignment" that incorporates analysis of "subsequent price movement."[5]  This is plainly expert testimony that cannot now be admitted through a lay summary witness.  The government had no opportunity through either Rule 702 or Daubert proceedings to challenge the reliability, methodology, helpfulness, or "fit" of such testimony.  Moreover, without a sponsoring expert, the government did not have the other features of Rule 16's expert disclosures to challenge the qualifications and experience of the sponsor of the chart.  And because it was not disclosed, the government did not have the time agreed to under the Court's order to contemplate a rebuttal expert to respond to this evidence.  The Court should not reward this failure to comply with the expert disclosure schedule and should exclude Ex. 2617.

Defendant is attempting to apply a custom analytical framework to trading and tweet data to offer a complicated opinion based on specialized knowledge that requires a qualified expert.  This is not a mere summary of his trading data.  A proper summary exhibit distills what voluminous records say.  This exhibit instead creates a series of new analytical definitions and methodologies that exist nowhere in the underlying records.  As examples: Ex. 2617 describes exit events (p. 3) and rapid exit events (pp. 3, 8-10).  An exit event is defined as a "complete position lifecycle: Mr. Left's holdings in a ticker move from zero to a non-zero peak (long or short) and return fully to zero."  Neither the brokerage records nor the tweets contain anything called an "exit event."  This is expert

---

[5] Exhibit 2617 at 14.

6

analysis created by (1) reconstructing minute-by-minute position histories from raw transaction data, (2) identifying zero-to-zero cycles, and (3) characterizing each cycle as a discrete event. Rapid exit events (p. 3, 8-10) are defined as an "exit event with a peak position value greater than $1 million, completed within five trading days or fewer from entry to full exit." These metrics do not independently exist in the data; they are chosen by an expert and reflect the expert's opinion about what counts as "rapid" and what counts as a "meaningful" position size. Different thresholds would likely yield different results. The choice of these particular thresholds may itself reflect expert opinion. It follows that these conclusions also require expert testimony. There are also methodological choices like the tweet date range (p. 3) that require expert judgment. Unaware of who did this analysis or made this chart, the government cannot adequately critique the analysis.

A plain reading of pages 11-14 reveals Ex. 2617's expert nature. It contains multiple parameters, analytical threshold guidance, and even describes its own criteria as a "methodology." (Ex. 2617 at 13.) Some expert created this and determined the thresholds and purported methodology, but the government does not know who. The government was given no pre-trial opportunity to review, challenge, or rebut this sentiment-price alignment analysis. It is an attempt to improperly introduce causation evidence, which the Court has been clear must be confined to a properly qualified (and noticed) expert.

The Sentiment-Price Alignment Analysis is expert testimony. (Ex. 2617 at 11-14.) It goes through a multi-step analysis that requires scientific, technical, or other specialized knowledge. The results cannot be derived by simple arithmetic or a summary of the

7

underlying records.  Defendant's attempt to push in such barely veiled expert testimony should be denied.  This reveals that DX 2617 is anything but a simple summary chart and instead a full blown expert analysis.  See Ex. 2617 at 13 (defining "compute alignment rate by group").

If the Court were to permit this exhibit to come into evidence, at the very least, it should conduct a Daubert hearing to identify the preparer of the chart and provide sufficient disclosure of complete opinions, work product, and identification of the information in each category.

Lay witnesses may not offer expert statistical opinions. Zottola v. City of Oakland, 32 F. App'x 307, 313 (9th Cir. 2002) ("Any statement that she might offer would have required expertise that, under this record, she did not possess about test validation and statistical analyses."); see also United States v. Holmes, 163 F.4th 547, 561–62 (9th Cir. 2025) (finding error in the district court's admission of lay testimony used to offer an expert statistical analysis and interpretation of the results that was based on highly specialized knowledge, but ultimately finding the error harmless).  Where, as here, expert testimony is attempted to be offered through a lay witness, it must be excluded.

**IV.   CONCLUSION**

For all the foregoing reasons, the government respectfully requests that Exhibits 2609, 2610, and 2617 be excluded from evidence at trial.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for the United States, certifies this memorandum of points and authorities complies with the 7,000 word limit of L.R. 11-6.1.

Dated May 13, 2026                    /s/

Benedetto L. Balding
Assistant United States Attorney