**DYNAMIS LLP**

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

**AARON KATZ LAW LLC**

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

**WEIL, GOTSHAL & MANGES LLP**

ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
BEN NICHOLSON (Cal. Bar No. 317970)
ben.nicholson@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:24-cr-00456-VAP |
| v. | **DEFENDANT ANDREW LEFT'S OPPOSITION TO GOVT. PROPOSED JURY INSTRUCTION (DKT. 390)** |
| ANDREW LEFT, | |
| Defendant. | Date:      May 27, 2026<br>Time:     8:00 a.m.<br>Ctrm:     8C<br>Judge:   Hon. Virginia A. Phillips |

At today's charging conference, the government admitted that it could locate no court that has *ever* given a "scalping" instruction. Nonetheless, the government has filed a proposed instruction at Dkt. 390 that will almost certainly result in reversal by the Ninth Circuit if Mr. Left is convicted. This is because the government's proposed instruction bears no relationship to the actual law as described below. The instruction—which cites no caselaw in support—is anchored in abrogated and non-controlling civil authority, contradicts the Government's own concession on disclosure duties, substitutes a pejorative label for proof of the statutory elements, and is duplicative of the fraud instructions.

**First, the authorities cited by the government previously and at oral argument do not apply.** The government today referenced a "Supreme Court" case to support its scalping theory, most likely referring to *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963). *Capital Gains* is an Investment Advisers Act § 206 civil injunction against a registered investment adviser; its fiduciary-duty rationale does not reach a research publisher operating at arm's length. *Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979), is the only Ninth Circuit scalping authority the Government has cited, and the Government's own parenthetical concedes that *Zweig* was "abrogated . . . by *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990)."

In that regard, *Zweig*'s flexible duty standard -- that *Zweig* had a duty to disclose his intent to sell based on a five-factor test that did not explicitly require a fiduciary-type relationship -- has been replaced by *Chiarella*. *See Hollinger*, 914 F.2d at 1570 n.9 (explaining "flexible duty" test that had been "put to rest"). Because the Government's "scalping" theory rests on an alleged material omission—the non-disclosure of intent to trade—such a theory of liability is only actionable under the securities laws when there is a duty to speak. *Chiarella v. U.S.*,

- i -

445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."). The duty to speak must arise from a statute, regulation, or recognized legal relationship. *Dirks v. SEC*, 463 U.S. 646, 654-55 (1983). Abrogated authority cannot define a criminal rule of decision, and the government's attempts to have this court overrule *Chiarella* and *Dirks* should be rejected.

Further, other cases previously cited by the government, *SEC v. Abellan*, 674 F. Supp. 2d 1213 (W.D. Wash. 2009), and *SEC v. Sripetch*, 2020 WL 6396927 (S.D. Cal. Nov. 2, 2020), are civil SEC actions that resolve nothing for a criminal jury. No published Ninth Circuit criminal decision defines "scalping" as a freestanding basis for § 1348 liability, and the Ninth Circuit Model Instructions contain no scalping instruction. The Government wants this Court to issue an instruction that no court, in any jurisdiction, has *ever* given.

**Second, the instruction circumvents the duty-to-disclose predicate this Court recognized.** A nondisclosure theory requires "an independent duty (either fiduciary or derived from an explicit and independent statutory requirement)." ECF No. 274, at 9. Absent such a duty, "there can be no fraud." *Chiarella v. United States*, 445 U.S. 222, 235 (1980); *Dirks v. SEC*, 463 U.S. 646, 654 (1983). The Government has conceded that there is no such thing as a holding period, but then seeks to impose a holding period. The draft instruction plainly states that scalping is a practice "where the holder of a security recommends that security as an investment, whether long or short, with pre-existing intent to profit from the ensuing market reaction." This means that anyone "recommending" a security—or even commenting on it on Twitter—will be prohibited from selling "from the ensuing market reaction" if they have a "pre-existing intent to profit." This makes no sense. Even worse, the government's proposed definition does not explain how "scalping" can be a fraud. Obviously, if Mr. Left were to disclose his trading intentions or

- ii -

potential trading intentions (as he did through disclaimers) he could not have committed fraud. Fraud cannot be committed if people are aware of how Mr. Left may trade—and as the government has conceded here, Mr. Left has had disclaimers since the early 2000s as well as reports such as Tesla, where he explicitly told people that he would trade. Effectively, the government is seeking a directed verdict on a non-existent crime.

**Third, the instruction completely misstates the law of scalping**. Under the government's formulation, a person does not even need to trade "in the opposite direction." Rather, a person commits scalping by only having an "intent" to "profit." That obviously cannot be. Moreover, the government's version of scalping does not require a false statement. Even Dr. Cain agreed that market manipulation could not be accomplished through the injection of truthful information into the market. Thus, it is entirely unclear how the government arrived at this definition, which appears to be a thought-crime premise by an intent to profit. Indeed, this definition varies considerably even from the previous iterations of "scalping" proposed charges contained in the draft jury instructions sent to this Court.

Further, all of the "scalping" cases previously cited by the Government involved an individual, usually a paid promoter, touting the stock to investors as part of a recommendation to them personally. In *SEC v. Beck*, No. 2:22-cv-00812-FWS-JC, 2024 WL 1626280, at *2 (C.D. Cal. Mar. 26, 2024), the defendant formed "TeamBillionaire," and he posted and paid third-parties to post tweets such as "TURN $5k into $100K"; "EXPECT MEGA PROFITS ABOVE 2,000%+"; "TURN UR $1,000 INVESTMENT INTO $20,000"; "TURN UR $5,000 INVESTMENT INTO $10,000"; and "WANNA TURN UR $5,000 INVESTMENT INTO $100,0 00+?" *SEC v. Thompson*, 238 F. Supp. 3d 575 (S.D.N.Y. 2017) involved paid stock promoters of penny stocks issuing false and misleading press releases about those stocks. At bare minimum, scalping requires "recommending

- iii -

that others purchase shares in certain issuers . . . ." Dkt. 248 at 17. Virtually every case arose out of thinly-traded penny stocks. Left did not recommend stocks and he certainly was not a penny-stock promoter.

Likewise, *Zweig* involved a newspaper columnist who: (a) secretly owned stock in companies he promoted; (b) received compensation from the companies; (c) conducted no independent research but merely republished company information; (d) operated in thinly traded penny stocks susceptible to manipulation; and (e) made "no effort to portray the facts accurately." *Id*. at 1265–67. None of those factors -- factors the Government ignores -- are present here.

In every scalping case the Government has previously cited, the duty to disclose arose because the defendant had an undisclosed financial relationship with the issuer (compensation, secret ownership) or held himself out as a disinterested advisor (investment adviser, fiduciary). *Zweig*: undisclosed issuer compensation. *S.E.C. v. Blavin*, 557 F.Supp. 1304, 1312 (E.D. Mich. 1983), *aff'd*, 760 F.2d 706 (6th Cir. 1985): unregistered investment adviser with undisclosed ownership. *United States v. Cannistraro*, 800 F. Supp. 30, 84 (D.N.J. 1992): broker with undisclosed financial interest. *SEC v. Thompson*, 238 F. Supp. 3d 575, 597 (S.D.N.Y. 2017): promoter compensated in stock. In each case, the disclosure duty attached to the relationship, not to the trading. Left had no relationship with any issuer. He received no compensation from any company he covered. He owed no fiduciary duty to his Twitter followers. Absent that relational predicate, there is no duty, and without a duty, there is no omission, and without an omission, there is no scalping.

Finally, although the government has mentioned *SEC v. Gallagher*, 2023 6276688 (S.D.N.Y. 2023)—a penny-stock scalping case—that court analyzed the case as one where the failure to disclose stock sales rendered affirmative statements (clear recommendations) to be false and misleading under 10b5-b. *Id*. at *9. *Gallagher* is of no help to the government.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the government's proposed modified instruction, filed at Dkt. 390, be rejected.

Dated: May 26, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*